STATE OF NORTH CAROLINA v. JATHIYAH A. AL-BAYYINAH

No. 550A03

(Filed 19 August 2005)

## 1. Appeal and Error— preservation of issues—constitutional question—not raised at trial

A constitutional issue not raised at trial was not preserved for appellate review.

## 2. Confessions and Incriminating Statements— statements by defendant just after arrest—admissible

The trial court did not abuse its discretion in a prosecution for first-degree murder and attempted robbery by admitting statements made by defendant to an officer just after his arrest that he couldn't understand being released from prison without a job and being expected to make a living, that he committed the robbery with an accomplice, that he wanted to go back to the correctional facility, and that he didn't belong in society. These statements were probative of defendant's motive and intent.

## 3. Criminal Law— limiting instruction—objected to by defendant—not required—admissions of party opponent

A limiting instruction was not required in a prosecution for first-degree murder and attempted armed robbery where the court admitted incriminating statements made by defendant shortly after his arrest. Defendant's counsel objected to such a proposed instruction during the charge conference, defendant did not argue on appeal that his representation was insufficient, and no instruction was required in any case because the statements were properly admitted as admissions of a party opponent.

## 4. Evidence— impeachment—prior convictions—not applicable

The trial court did not err in a prosecution for first-degree murder and attempted armed robbery by deciding that N.C.G.S. § 8C-1, Rule 609 (the use of prior convictions to impeach a testifying witness) was inapplicable to defendant's statements because defendant did not testify and the statement was not used to impeach him.

**5. Confessions and Incriminating Statements—** *Miranda* **warnings—public safety exception**

The trial court did not err in a prosecution for first-degree murder and attempted armed robbery by admitting a statement made without *Miranda* warnings where defendant was pursued into a wooded thicket by an unarmed officer with a tracking dog, the officer asked defendant where the knife was, and defendant said that he did not have a knife. One of the *Miranda* exceptions is for public safety. Under the circumstances in this case, the question was necessary to secure the officer's safety.

**6. Constitutional Law— effective assistance of counsel— record inadequate to determine claim**

Defendant's claim of ineffective assistance of counsel under the Sixth Amendment based on his counsel's failure to present available exculpatory and impeaching evidence could not be decided on the record before the Supreme Court and was dismissed without prejudice to defendant's right to raise the claim in a post-conviction motion for appropriate relief.

**7. Appeal and Error— preservation of issues—prohibited arguments**

Defendant did not preserve for appellate review the court's sustaining of an objection to his argument on residual doubt. The State had made a motion *in limine* to prohibit certain arguments, including residual doubt, defense counsel agreed that such arguments were impermissible and that he did not intend to make that argument, and the court had granted the motion. Having violated the trial court's order restricting certain statements and arguments at trial, defendant cannot now use that violation to bring the issue on appeal.

**8. Constitutional Law— effective assistance of counsel— statements and arguments**

Defendant did not receive ineffective assistance of counsel in a capital sentencing proceeding where he argued that his counsel conceded prior crimes without his consent, made inappropriate statements, and did not adequately test the State's case. Defense counsel made the tactical decision to try to lessen the impact of defendant's prior convictions and gain credibility by discussing the convictions openly; he attempted to have the jury understand his role as advocate; and he attempted to appeal to the jury's empathy for a living being.

**9. Constitutional Law— effective assistance of counsel—not requesting mitigating circumstance**

Defendant did not receive ineffective assistance of counsel in a capital sentencing hearing where defense counsel told the jury that defendant did not request submission of the mitigating circumstance of being an accomplice to the crime. The jury had already found defendant guilty and counsel wished to retain credibility with the jury, which found several other mitigating factors.

**10. Constitutional Law— effective assistance of counsel—testing of prosecution's case**

Defense counsel engaged in sufficient adversarial testing of the prosecution's case that defendant's Sixth Amendment right to counsel was not violated.

**11. Sentencing— death—proportionate**

A sentence of death was not disproportionate where defendant had a history of violent crime, committed this murder during an attempted armed robbery, and was convicted based on premeditation and deliberation and felony murder.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Judge Jerry Cash Martin on 13 June 2003 in Superior Court, Davie County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 19 April 2005.

*Roy Cooper, Attorney General, by Joan M. Cunningham and Amy C. Kunstling, Assistant Attorneys General, for the State.*

*Staples S. Hughes, Appellate Defender, by Janet Moore, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant was indicted on 26 May 1998 for the murder and attempted robbery with a deadly weapon of Simon Wilford Brown, Jr. Defendant was first tried capitally at the 1 November 1999 Criminal Session of Davie County Superior Court. The jury found defendant guilty of both charges, basing first-degree murder on the theory of felony murder. Following a capital sentencing proceeding, the jury recommended that defendant be sentenced to death. The trial court entered judgment accordingly. On appeal this Court granted defendant a new trial on the basis that evidence of other crimes allegedly

committed by defendant was improperly admitted at trial. *State v. al-Bayyinah*, 356 N.C. 150, 567 S.E.2d 120 (2002).

Defendant was retried capitally for first-degree murder at the 12 May 2003 Special Criminal Session of Davie County Superior Court. The jury found defendant guilty of first-degree murder on the bases of premeditation and deliberation and felony murder. At the capital sentencing proceeding, the jury recommended that defendant be sentenced to death, and judgment was entered accordingly.

The State's evidence tended to show that the victim, seventy-one-year-old Simon Wilford Brown, Jr., owned a wholesale grocery called S.W. Brown & Son in Mocksville, North Carolina. His wife Rebecca, son Charles, and daughter-in-law Nanette were employees at the business. On 6 March 1998, Charles arrived at the business around 7:30 a.m. The door remained locked after Charles used his key and went inside. Charles attended to orders and used the bathroom before he heard his father enter the store. Charles then heard a loud noise, which sounded like "the office door slamming up against the file cabinet," and his father calling out for him. Charles ran to the office and saw his father between the office and the front door. Charles remembered that "he said the man stabbed me, and he was pointing towards the door." After telling his father to call 911, Charles ran outside to his truck parked at the side of the building. He retrieved his pistol, drove his truck to the loading dock entrance, and ran along the side of the building. Charles heard a siren and ran back inside to his father.

Mr. Brown called 911 at approximately 8:15 a.m. He reported that "he had been a victim of a robbery, and he had been injured in the course of the robbery." He reported that the robber was a black man wearing dark clothing who had come up behind him. He also stated that he thought the man had been in the store the previous day and that he had cashed a check for the man. He further reported that he had blood on his sweater. The call lasted just under three minutes.

When Charles came back inside, he saw his father standing in the office and talking on the telephone with 911 dispatch. Charles saw blood immediately below his father's neck, and he heard his father tell the 911 operator that "he had [seen] the man the previous day and cashed his check." Charles asked his father to sit down, hung up the phone, and attended to the wound. Charles recounted, "He kept repeating that he had seen the man the day before and cashed his check." When the EMTs arrived, Mr. Brown became semi-conscious and non-verbal.

Mr. Brown was taken by ambulance to the emergency room and then airlifted to another hospital. Mr. Brown never regained consciousness, and he died on 15 March 1998 after being removed from life support. His death was caused by a stab wound to the right side of his chest, approximately one-half inch long and almost three-eighths of an inch wide. The wound was about two inches deep and caused a pneumothorax around Mr. Brown's right lung, eventually causing heart, kidney, and liver failure, and finally pneumonia.

At the scene of the crime, Mr. Brown's office was in disarray. Money and papers were scattered on the floor; a desk drawer was pulled open; and a bulletin board had fallen to the floor. Mr. Brown's wallet was found in the office.

Law enforcement officers responding to the call began searching the area around the store for suspects matching the description given by the victim of a black man wearing dark clothing. Deputy Sheriff Joey Reynolds spotted defendant, who was wearing dark clothing, and radioed in that he had a possible suspect. When Deputy Reynolds made eye contact with defendant, defendant began to run; Deputy Reynolds left his car to chase defendant. Defendant entered a thicket of dense woods. Officers secured the perimeter of the thicket, and defendant was apprehended after about an hour of searching. Lieutenant James Phipps of the Sheriff's Department found a knife under some leaves near where defendant was found. The knife blade was later determined to be consistent with the wound suffered by the victim.

Two witnesses reported seeing a man, wearing dark clothing, near the grocery business at around 7:30 a.m. One of the witnesses identified the man as defendant. The other witness, who could not identify the man, also reported seeing him running from the building a short time later, just before Charles ran from the building to his truck.

Rebecca Brown and Nanette Brown both remembered seeing defendant in the store on previous occasions, and they especially remembered his unusual name. Defendant would cash his checks there and purchase cigarettes. Nanette testified that on the morning of 5 March 1998, the day before the stabbing, defendant came into the store to get some matches or cigarettes. He asked Nanette if she was alone, to which she replied in the negative, even though Mr. Brown was out of the building at the time. Defendant left after hearing a noise outside.

Records at the store indicated that two payroll checks were cashed the day before the stabbing, one for defendant and the other for Earnest Cain. Evidence submitted by the State revealed that Earnest Cain was a regular customer at the store; that Mr. Brown knew him well enough to call him by his first name; and that Mr. Cain was clocked in at work during the time of the stabbing. Neither Nanette nor Rebecca remembered cashing defendant's check. Defendant contended at trial that an acquaintance of his cashed his check and, thus, was the person who stabbed Mr. Brown and whom Mr. Brown remembered seeing the previous day.

## GUILT-INNOCENCE PHASE

Defendant first contends that the trial court erred by denying his motion to suppress statements he made to a law enforcement officer after his arrest. Sergeant Harry Rawlings testified that after defendant was arrested and placed in a patrol car for transport to the police station, defendant stated that he "couldn't understand being released . . . from prison, how they could send him out here with no job and expect him to make a living." Defendant also stated that he did the robbery with an accomplice and that "he wanted to go back to the correctional facility. He didn't belong out here," meaning "in society."

Defendant first moved to suppress his post-arrest statements before his first trial. After a hearing his motion was denied. Before the second trial, defendant submitted an amended motion to suppress based on Rules of Evidence 404(b) and 609. Defendant's amended motion was also denied. The trial court determined that defendant's statements were relevant under Rule 401 and admissible as admissions of a party-opponent under Rule 801(d)(A). The trial court addressed defendant's 404(b) argument and decided that the statements were being offered to show motive and intent, not defendant's proclivity to commit similar bad acts. Additionally, the trial court ruled that Rule 609 was inapplicable to the statements and that under Rule 403, the probative value of the statements outweighed any unfair prejudice to defendant.

Defendant further argues that the trial court erred in overruling defendant's objections and by failing to provide limiting instructions with regard to "other crimes" evidence. Defendant argues that inadmissible other crimes evidence was presented to the jury and created impressions about defendant that effectively stripped him of his presumption of innocence. Finally, defendant contends that his constitu-

tional rights were violated in that he was denied his due process right to a fair trial and that he was prevented from arguing that he was free from culpability for the prior bad acts. Thus, defendant contends, the statements should not have been admitted into evidence at his second trial. We disagree.

**[1]** We first note that defendant's constitutional argument has not been properly preserved for appellate review as he did not raise this issue at trial. *State v. Call*, 349 N.C. 382, 410, 508 S.E.2d 496, 514 (1998); *see* N.C. R. App. P. 10(b)(1).

**[2]** Regarding defendant's evidentiary argument, Rule 404(b) provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (2003).

This Rule provides a "general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).

Relevant evidence, that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," is generally admissible. N.C.G.S. § 8C-1, Rules 401, 402 (2003). Relevant evidence may, however, be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . or [by] needless presentation of cumulative evidence." *Id.*, Rule 403 (2003). Whether to exclude evidence is a decision within the trial court's discretion. *Coffey*, 326 N.C. at 281, 389 S.E.2d at 56.

Defendant argues that motive to commit robbery was shown by other evidence, that the statements at issue had no logical connection to the crime for which he was tried in the instant case, and that the mention of defendant's having been in prison was unduly prejudicial.

Defendant's statement that he was expected to make a living out-side prison clearly shows a motive for the robbery of the grocery business. Defendant implied that he was unable to work or make a living and that he had no money. Also, his statement that he wanted to go back to prison demonstrates a possible motive to commit a crime in order to accomplish that objective. These statements were made by defendant himself shortly after the crime and were, thus, distinguishable from other evidence. As such the statements were substantially probative of defendant's motive and intent. Furthermore, the statements do not mention that defendant had committed felonies or other crimes, just that he "wanted to go back to" prison. Considering these factors, the trial court did not abuse its discretion in ruling that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See State v. Lambert*, 341 N.C. 36, 50, 460 S.E.2d 123, 131 (1995) (stating that "the fact that [evidence] is also very prejudicial does not make it unfairly so").

[3] Finally, defendant argues that the trial judge should have given a limiting instruction that the statements were to be considered only to show defendant's motive or intent and not as substantive evidence. However, during the charge conference defendant's trial counsel objected to such a proposed instruction; and on appeal defendant has not alleged that his counsel was deficient for doing so. Moreover, no limiting instruction was required, as defendant's statements were properly admitted as admissions of a party opponent under Rule 801(d)(A). Therefore, defendant's argument has no merit.

Rule 801(d)(A) provides that an admission by a party-opponent is admissible against the party. N.C.G.S. § 8C-1, Rule 801(d)(A) (2003). " 'An admission is a statement of pertinent facts which, in light of other evidence, is incriminating.' " *Lambert*, 341 N.C. at 50, 460 S.E.2d at 131 (quoting *State v. Trexler*, 316 N.C. 528, 531, 342 S.E.2d 878, 879-80 (1986)). In this case the challenged statements made by defendant, when considered in light of other evidence, constitute an admission by a party-opponent and were thus admissible against him.

[4] The trial court also did not err in deciding that Rule 609 was inap-plicable. The rule addresses the use of evidence of prior convictions to impeach a testifying witness. N.C.G.S. § 8C-1, Rule 609 (2003). In this case defendant did not testify; thus, his statement was not used to impeach him. Therefore, this argument is without merit. These assignments of error are overruled.

**[5]** Next, defendant contends that the trial court erred by refusing to allow defendant's motion to suppress statements he made to Officer Dean Myers in the wooded thicket on 6 March 1998. Defendant made his motion before his first trial; the motion was denied on the basis that the statement fell within the public safety exception to *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694 (1966). Before the second trial, the trial court left the ruling undisturbed. Defendant also argues that the trial court erred by overruling his objection to the testimony during his second trial. On 6 March 1998 Officer Myers was the first person to find defendant in the woods during the manhunt. At the time Officer Myers was using his tracking dog, an AKC-registered bloodhound, which was on a leash. The officer asked defendant where the knife was, and defendant responded that he did not have a knife. After defendant was arrested, a knife was found near the site along with some other small items. Defendant argues that his statement to Officer Myers that he did not have a knife was made before he received warnings required by *Miranda* and that the trial court erred in determining that the statements fell within the public safety exception to *Miranda.*

*Miranda* warnings protect a defendant from coercive custodial interrogation by informing the defendant of his or her rights. *State v. Hyatt,* 355 N.C. 642, 653-54, 566 S.E.2d 61, 69 (2002), *cert. denied,* 537 U.S. 1133, 154 L. Ed. 2d 823 (2003). However, in *New York v. Quarles,* the United States Supreme Court recognized certain exceptions to *Miranda* warnings. 467 U.S. 649, 81 L. Ed. 2d 550 (1984). One of those exceptions is the public safety exception, which provides that "questions asked by law enforcement officers to secure their own safety or the safety of the public and limited to information necessary for that purpose are excepted from the *Miranda* rule." *State v. Brooks,* 337 N.C. 132, 144, 446 S.E.2d 579, 587 (1994).

Defendant argues that the facts of the instant case differ substantially from the facts of *Quarles,* in which the United States Supreme Court found that a defendant's statements made to a police officer in a supermarket about the location of a gun used by the defendant to commit a crime just minutes before could be admitted as evidence, notwithstanding that *Miranda* warnings had not been given at the time. *Quarles,* 467 U.S. at 655-60, 81 L. Ed. 2d at 557-59. Defendant notes that in the instant case, police took forty-five minutes to track him within a thick wooded area. The perimeter of the area was secured by police officers as other officers took a tracking dog into the woods to search for defendant. Defendant argues that he was sur-

rounded, had no chance of getting away, and was lying flat on the ground. Further, the weapon being searched for was a knife, not a gun, and no members of the public were in the area as had been the case in *Quarles*. Defendant contends that he was helpless and was being threatened by a vicious dog and that Officer Myers' safety was guaranteed by the close proximity of other armed law enforcement officers. However, defendant ignores other evidence that supports the trial court's ruling.

Officer Myers testified that he was on the tracking team and was the officer handling the tracking dog on the morning of 6 March 1998. Officer Myers began the search with his dog and two other officers; however, by the time he reached defendant, the other officers were about fifteen yards behind, caught in briars. Officer Myers was not armed and, thus, kept a close eye on defendant. Knowing that the crime was a stabbing, Officer Myers asked defendant where the knife was. Detective Robert Trotter also testified about the events that morning. He stated that he was the second officer to arrive at defendant's location and that he pulled his gun and ordered defendant not to move because he knew Officer Myers was unarmed and that a weapon had been used in the robbery.

Officer Myers was alone and unarmed when he discovered defendant. He knew the crime was a stabbing and that defendant could have a knife in his possession. His question to defendant was limited to determining the location of the knife. Under the circumstances this question was necessary to secure Officer Myers' own safety, a purpose that falls within the public safety exception to *Miranda*. Therefore, the trial court properly concluded that the public safety exception applied to defendant's statement. This assignment of error is overruled.

[6] In his next assignment of error, defendant contends that his trial counsel failed to provide effective assistance as required by the Sixth Amendment. Defendant argues that his counsel failed to present available exculpatory and impeaching evidence. Defendant notes numerous instances in the second trial where witnesses' testimony contradicted or differed from that given by the same witnesses in defendant's first trial. Defendant further notes that evidence was not presented as to certain facts or statements that were introduced in his first trial. Defendant argues that such evidence would have shed light on the identity of the victim's attacker and would have undermined the credibility of the State's witnesses and that his counsel's

performance was deficient for failing to introduce the exculpatory and impeaching evidence.

"When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." *State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693 (1984)). In order to do so, a defendant must satisfy a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. at 687, 80 L. Ed. 2d at 693. Both prongs of this test must be satisfied in order to establish ineffective assistance of counsel. *Id.* To demonstrate prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 80 L. Ed. 2d at 698.

Defendant claims that his counsel was ineffective for failure to impeach the State's witness, Nanette Brown, with her testimony from defendant's first trial. Defendant claims that Ms. Brown made numerous contradictory statements that defense counsel should have brought to the jury's attention by confronting the witness with her prior testimony. For example, defendant argues that Ms. Brown's testimony in the first trial actually identified Brian Wilson, not defendant, as the person who cashed defendant's check the day before the stabbing based on the different types of necklaces the two men wore. This evidence was not presented in the second trial. Defendant also argues that evidence that Ms. Brown mistakenly identified black males from mug shot books should have been introduced at the second trial. Ms. Brown selected a picture of someone who she believed was in the store the day before the stabbing; however, that man was never in the store and had an alibi. Defendant contends that this information would have cast doubt on the ability of Ms. Brown and other eyewitnesses to correctly recall details surrounding the inci-

dents that occurred on the day before the stabbing. Defendant argues that counsel's failure to present the impeaching evidence constitutes ineffective assistance and that absent this mistake, the result of his trial would have been different.

This Court has stated that "[c]ounsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear." *State v. Fletcher*, 354 N.C. 455, 482, 555 S.E.2d 534, 551 (2001), *cert. denied*, 537 U.S. 846, 154 L. Ed. 2d 73 (2002); *see also State v. Prevatte*, 356 N.C. 178, 235-36, 570 S.E.2d 440, 471-72 (2002), *cert. denied*, 538 U.S. 986, 155 L. Ed. 2d 681 (2003). Moreover, this Court indulges a strong presumption that trial counsel's representation is within the boundaries of acceptable professional conduct. *State v. Fisher*, 318 N.C. 512, 532, 350 S.E.2d 334, 346 (1986). As the United States Supreme Court has stated:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .

*Strickland v. Washington*, 466 U.S. at 689, 80 L. Ed. 2d at 694.

As to whether an ineffective assistance of counsel claim can be resolved on direct appeal, this Court has stated: "[Ineffective assistance of counsel] claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002) (citations omitted). Therefore, on direct appeal we must determine if these ineffective assistance of counsel claims have been prematurely brought. If so, we must "dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent [motion for appropriate relief] proceeding." *Id.* at 167, 557 S.E.2d at 525.

After reviewing the record, we conclude, as the State argues, that this claim of ineffective assistance cannot properly be decided on the

merits based on the record before us. Trial counsel's strategy and the reasons therefor are not readily apparent from the record, and more information must be developed to determine if defendant's claim satisfies the *Strickland* test. Therefore, this issue is dismissed without prejudice to defendant's right to raise this claim in a post-conviction motion for appropriate relief.

## SENTENCING PROCEEDING

[7] Defendant next argues that the trial court erred by sustaining the State's objection to defendant's "residual doubt" argument during his closing argument in the sentencing proceeding. Defense counsel argued:

> And I recognize the awful job of deciding which punishment to inflict falls to you; and I would point out to you in the past when we killed people by firing squad, there was one gun that had blanks in it. So that if it were learned later that there had been some mistake made, that the wrong person had been—

The court then sustained an objection by the prosecutor. Before trial the State filed a motion *in limine* to prevent certain arguments by the defense, including "residual doubt" arguments. At that time defense counsel agreed that residual doubt arguments were impermissible and stated that defense counsel did not intend to make a residual doubt argument. The trial court granted the State's motion. Defendant now argues that since he attempted to make a residual doubt argument in closing during the sentencing proceeding and that since the State's objection was sustained, defendant has preserved this issue for appellate review. We disagree.

Having violated the trial court's order restricting certain statements and arguments at trial, defendant cannot now use this violation to his benefit to bring the residual doubt issue before this Court. Accordingly, this assignment of error is overruled.

[8] Next, defendant contends that his counsel provided ineffective assistance during the sentencing proceeding. Defendant argues that his counsel conceded prior crimes without defendant's consent and made inappropriate statements that neither constituted effective assistance nor adequately tested the State's case.

Defendant first argues that counsel improperly conceded that defendant committed three prior violent crimes. The State submitted four aggravating factors to the jury, three of which were prior

felonies submitted under N.C.G.S. § 15A-2000(e)(3). Defendant admits he gave counsel consent to concede that the State had the necessary documents to show that defendant had been convicted of three prior crimes, but says he never gave permission for his attorneys to admit his guilt of those crimes. In particular, defendant points to this statement by his counsel:

> Those are terrible, terrible acts that he committed. He was punished for them. But that's not enough. That's not enough, and maybe it isn't enough. And that's okay, because the only two options you have is life in prison without parole or the death penalty. So one way or the other, you're going to get to punish him again for all of those things.
>
> The State has their aggravators, and there's no doubt about that.

Counsel further argued, "You know he's committed seriously violent crimes, and you know he spent much of his adult life in prison, and we're not contesting any of that." The trial judge stopped to ask defendant if he approved of trial counsel's admitting that the aggravators were proven beyond a reasonable doubt. Defendant told the court that he did not admit to anything, that he was not remorseful, that he had pleaded no contest to the crimes rather than pleading guilty, and that he continued to maintain his innocence. Defendant acknowledged, "I mean it's on the record, yeah, that they got—what they call a conviction." The following exchange then took place:

> THE COURT: If I understand what you're indicating then, just let me see. You're agreeing or of the mind that your attorney may argue and admit that the convictions are there, but you do not admit the acts underlying—
>
> THE DEFENDANT: Right.
>
> THE COURT: —those convictions. Now, are you also indicating that you don't want your attorney to indicate they have been proven beyond a reasonable doubt? That is, conviction or can they—
>
> THE DEFENDANT: They're welcome—I consented to them, because like I say, I told you the other day fighting against a losing hand.
>
> THE COURT: All right. You don't want your attorney to admit—

STATE v. AL-BAYYINAH

[359 N.C. 741 (2005)]

THE DEFENDANT: Not—

THE COURT: —conviction's been proven or you don't want your attorney to admit that they've been established beyond a reasonable doubt?

THE DEFENDANT: Not on my behalf. I mean maybe the State feel they have been established beyond a reasonable doubt, but not by me. It's nothing. Never proven anything. That's my main concern. I'm not admitting to anything. Maintain my innocence until I die.

Soon thereafter, defendant conceded that counsel could admit to the convictions themselves but not to the underlying acts, except for the shooting of Georgia Matthews Turner, for which defendant was convicted and the conviction for which served as one of the felonies for the aggravator at issue here. Trial counsel explained that she assumed she was only admitting to the aggravators, not to the facts underlying them. When arguments resumed, however, counsel argued, "You can look at the convictions and conclude that he's done bad acts from those convictions."

Defendant also argues that counsel was deficient for arguing to the jury that it was counsel's "job" to prove that defendant's life had value and by implying that it was hard to come up with a reason to spare defendant's life by saying, "hours went by, and I had the yellow pad, and I had the pen, and there wasn't anything down there." Defendant also claims that the following statement was improper: "And if you vote to kill him, you vote to kill him because you want to and not because you have to." Defendant argues that these statements gave strength to the State's presentation of aggravating factors by acknowledging that defendant is a bad person and by appealing to jurors' subjective passions in asking for their mercy.

In addition, defendant claims counsel also improperly compared defendant to a subhuman life form by arguing:

And you may say [to me], aren't you ashamed . . . . Aren't you embarrassed to be asking for the life, to be pleading to save the life of this terrible person who has caused pain and suffering and God knows there has been pain and suffering, and we do not deny that. . . .

[W]hen we're driving down the road, if we see an animal dart out .onto the pavement, we'll swerve to miss it. Because we value life,

and we value it in the lowest life forms we have. And I'm not going to apologize, and I'm not going to be ashamed or embarrassed about any efforts I might make to save another human being's life.

Defendant contends that comparing a defendant to an animal is reversible error when done by the State and that defense lawyers should be held to the same standard.

Finally, defendant points to his counsel's statement to the jury that the defense had not asked to submit the "minor participant" statutory mitigating circumstance pursuant to N.C.G.S. § 15A-2000(f)(4). Counsel told the jury to make a note of the fact that the mitigating circumstance was submitted "only because it's required by law." Defendant notes that no juror found this mitigating circumstance to exist.

Defendant cites to *United States v. Cronic*, 466 U.S. 648, 80 L. Ed. 2d 657 (1984), in arguing that his counsel's performance was deficient for switching theories of the case between the guilt phase and the sentencing proceeding. Defendant contends that defense counsel provided ineffective assistance by abandoning the guilt-phase denial of culpability and by embracing a plea for mercy in the sentencing proceeding. Defendant appears to contend that by doing so, defense counsel failed to properly test the prosecution's case.

The United States Supreme Court stated in *Cronic*, "The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred." 466 U.S. at 656, 80 L. Ed. 2d at 666 (footnote omitted). Moreover, as stated above, this Court gives counsel "wide latitude in matters of strategy," *Fletcher*, 354 N.C. at 482, 555 S.E.2d at 551, and we presume that trial counsel's representation is within the boundaries of acceptable professional conduct. *Fisher*, 318 N.C. at 532, 350 S.E.2d at 346.

In this case, after reviewing trial counsel's arguments in context and as a whole, we conclude that: (i) applying the *Fair* standard stated above, this Court can resolve defendant's claims on the record before us on direct appeal; and (ii) defendant has not satisfied the *Strickland* test by his failure to show that trial counsel's per-

formance was deficient or that it prejudiced defendant such that he was deprived of a fair trial whose result was reliable. *Strickland v. Washington*, 466 U.S. at 687, 80 L. Ed. 2d at 693. Defendant has taken counsel's comments out of context and misconstrued their meaning in order to claim ineffective assistance.

Although defense counsel made statements against defendant's wishes that appear to concede that defendant committed the crimes for which he was previously convicted, defendant has failed to show that such arguments prejudiced his defense. Defense counsel made the tactical decision to try to lessen the negative impact of those convictions and to gain credibility with the jury by discussing the convictions openly. As defendant himself acknowledged, the State had the necessary proof of these convictions to support the aggravating circumstances; thus, no prejudice could result from admitting that the aggravators existed. The United States Supreme Court has found that whether or not a defendant expressly consented to counsel's argument was not dispositive in finding ineffective assistance. *Florida v. Nixon*, —— U.S. ——, ——, 160 L. Ed. 2d 565, 581 (2004). Moreover, this Court has held that the rule in *State v. Harbison*, 315 N.C. 175, 180, 337 S.E.2d 504, 507-08 (1985), *cert. denied*, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986), precluding defense counsel from admitting a defendant's guilt to the jury without the defendant's consent does not apply to sentencing proceedings. *State v. Walls*, 342 N.C. 1, 57, 463 S.E.2d 738, 768 (1995), *cert. denied*, 517 U.S. 1197, 134 L. Ed. 2d 794 (1996). Here, while defendant did not want his counsel to admit that he committed the underlying acts, he did consent to the overall strategy of admitting the convictions themselves. Although counsel may have inadvertently suggested that defendant committed the underlying acts, that the convictions existed was established, and without any evidence to the contrary, the jury undoubtedly would have found the aggravators to exist regardless of the content of counsel's argument.

Defendant's complaint regarding counsel's references to his legal representation of defendant as a "job," and to his difficulty in finding a reason to spare defendant's life, likewise has no merit. Counsel did not suggest that he was reluctantly representing defendant as in *King v. Strickland*, 714 F.2d 1481, 1491 (11th Cir. 1983), *aff'd on remand*, 748 F.2d 1462 (11th Cir. 1984), cited by defendant. Counsel was referring to his duty as defendant's lawyer. Nor was counsel, as defendant suggests, telling the jury that he could not come up with a reason to give defendant life rather than death. Rather, counsel was acknowl-

edging the inherent difficulty of anticipating how a jury would weigh mitigators against aggravators. Counsel attempted to convey to the jury that, although preparing for the sentencing hearing was difficult, he wanted to do the best he could for defendant after getting to know him as a client and that he had given much thought to his closing argument. This strategy was not unreasonable considering that the jury had already found defendant guilty of first-degree murder; counsel was merely attempting to have the jury understand his role as defendant's advocate and to view the case from his perspective.

Defense counsel's plea to the jury, "And if you vote to kill him, you vote to kill him because you want to and not because you have to," also does not fall below the standard of a reasonable trial strategy. Counsel first noted the prosecution's argument that the only way to protect society from defendant was to put defendant to death. Counsel reminded the jury that defendant's expert had testified that defendant was unlikely to pose a threat of future dangerousness in prison and urged the jury that it did not have to sentence defendant to death to protect society. Counsel then argued that life imprisonment is just as effective and that life imprisonment is sufficient punishment for murder. Counsel did not, as defendant argues, "invite jurors to kill defendant." Counsel appealed to the jurors' respect for life by showing them a reasonable basis for a life sentence as the alternative to a death sentence. Defense counsel ended her argument by telling the jury, "This is not a time to kill." Viewed in its entirety, this argument did not constitute ineffective assistance of counsel.

Defendant also misconstrues his counsel's statement regarding "lowest life forms." Defendant's argument that counsel compared defendant to a subhuman life form is misplaced. Although defendant cites to *State v. Jones*, 355 N.C. 117, 558 S.E.2d 97 (2002), for support, in that case it was the prosecutor's pejorative characterization of the defendant as "lower than the dirt on a snake's belly" that this Court found to be objectionable and not any statement by the defense counsel. 355 N.C. at 134, 558 S.E.2d at 108. In this case, defense counsel's statement did not sink to the level of name-calling or suggest an improper comparison of defendant to a lower life form, as was the case in *Jones*. Rather, counsel attempted to appeal to the jury's empathy for living beings by reminding them that all life has value. Such an argument on behalf of defendant's life does not constitute ineffective assistance.

[9] Defendant's contention that defense counsel should not have told the jury to disregard the mitigating circumstance regarding an accom-

plice to the crime is also without merit. In the charge conference, defense counsel argued to the trial court that the (f)(4) mitigator, that defendant was an "accomplice in or accessory to the capital felony committed by another person and his participation was relatively minor," should not be submitted to the jury in that the jury had already found defendant guilty of first-degree murder. Since the jury did not believe defendant's version of events that an accomplice or acquaintance committed the crime, defense counsel reasoned that introducing the mitigator might provoke the jury and prejudice defendant. The trial court submitted the mitigator on the basis that sufficient evidence had been presented to support the mitigator. Defense counsel also requested the trial court to give an instruction that defendant did not request the (f)(4) mitigating circumstance, and the trial court so instructed the jury. *See State v. Walker*, 343 N.C. 216, 222-24, 469 S.E.2d 919, 922-23 (directing that the trial court should instruct that defendant did not request the (f)(1) mitigator if given over defendant's objection), *cert. denied*, 519 U.S. 901, 136 L. Ed. 2d 180 (1996). Thus, defense counsel felt the need to apprise the jury that defendant did not request submission of that mitigator as a way of acknowledging the jury's findings in the guilt-innocence phase. Through this strategy defense counsel was endeavoring to retain credibility with the jury. Defendant asserts that by making this concession, counsel abandoned any basis for residual doubt. We have previously addressed defendant's residual doubt argument. We also note that while the jury did not find the (f)(4) mitigator, it did find the catchall mitigator pursuant to N.C.G.S. § 15A-2000(f)(9), as well as twelve of nineteen nonstatutory mitigators submitted. Defendant has failed to show that, but for this concession, a reasonable probability exists that the outcome would have been different. *Strickland v. Washington*, 466 U.S. at 694, 80 L. Ed. 2d at 698.

**[10]** Upon reaching our conclusion that defendant's claim of ineffective assistance based upon his trial counsel's statements in the sentencing proceeding are without merit, we also reject defendant's claim that *Cronic* analysis applies. In the sentencing proceeding, defense counsel engaged in sufficient adversarial testing of the prosecution's case such that defendant's Sixth Amendment right to counsel was not violated. Defendant's assignment of error is overruled.

## PRESERVATION ISSUES

Defendant raises two additional issues that this Court has previously decided contrary to his position: (i) whether North Carolina's

capital sentencing scheme is unconstitutional for being vague, over-broad, and applied in an arbitrary manner; and (ii) whether the death penalty is an inherently cruel and unusual punishment which violates the United States Constitution as well as international law.

Defendant raises these issues to urge this Court to reexamine its prior holdings. We have considered defendant's arguments on these issues and conclude that there is no compelling reason to depart from our prior holdings. These assignments of error are overruled.

## PROPORTIONALITY

[11] Finally, this Court has the exclusive statutory duty in capital cases pursuant to N.C.G.S. § 15A-2000(d)(2), to review the record and determine: (i) whether the record supports the jury's findings of any aggravating circumstances upon which the court based its death sentence; (ii) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (iii) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. *State v. McCollum*, 334 N.C. 208, 239, 433 S.E.2d 144, 161 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994).

After a thorough review of the transcript, record on appeal, briefs, and oral arguments of counsel, we conclude that the jury's finding of the four aggravating circumstances submitted was supported by the evidence. We also conclude that nothing in the record suggests that defendant's death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor.

Finally, we must consider whether the imposition of the death penalty in defendant's case is proportionate to other cases in which the death penalty has been affirmed, considering both the crime and the defendant. *State v. Robinson*, 336 N.C. 78, 132-33, 443 S.E.2d 306, 334 (1994), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 650 (1995). The purpose of proportionality review is "to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Proportionality review also acts "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980), *overruled in part on other grounds by State v. Johnson*, 317

N.C. 193, 203-04, 344 S.E.2d 775, 782 (1986). Our consideration is limited to those cases that are roughly similar as to the crime and the defendant, but we are not bound to cite every case used for comparison. *State v. Syriani*, 333 N.C. 350, 400, 428 S.E.2d 118, 146, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993). Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *State v. Green*, 336 N.C. 142, 198, 443 S.E.2d 14, 47 (citing *State v. Williams*, 308 N.C. 47, 81, 301 S.E.2d 335, 356, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983)), *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994).

In the case at bar, defendant was convicted of first-degree murder on the bases of premeditation and deliberation, as well as under the felony murder rule. The jury found all four of the aggravating circumstances submitted, three of which related to defendant's having been previously convicted of a felony involving the use or threat of violence to the person, specifically: (i) assault with a deadly weapon inflicting serious injury against Georgia Matthews Turner, N.C.G.S. § 15A-2000(e)(3) (2003); (ii) assault with a deadly weapon with intent to kill inflicting serious injury and armed robbery against James McCorkle, *id.*; (iii) voluntary manslaughter against Talmadge Pass, *id.*; and (iv) the murder was committed while the defendant was engaged in the commission of robbery with a dangerous weapon, *id.* § 15A-2000(e)(5) (2003).

The trial court submitted two statutory mitigating circumstances for the jury's consideration, namely: (i) the murder was committed by another person and defendant was an accomplice whose participation was relatively minor, *id.*, § 15A-2000(f)(4) (2003), and (ii) the catchall that there existed any other circumstance arising from the evidence which the jury deemed to have mitigating value, *id.*, § 15A-2000(f)(9) (2003). The jury did not find the (f)(4) mitigating circumstance to exist. The trial court also submitted nineteen non-statutory mitigating circumstances; the jury found twelve of these circumstances to exist and to have mitigating value.

In our proportionality analysis we compare this case to those cases in which this Court has determined the sentence of death to be disproportionate. This Court has determined the death sentence to be disproportionate on eight occasions. *State v. Kemmerlin*, 356 N.C. 446, 573 S.E.2d 870 (2002); *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled in part on*

*other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). This case is not substantially similar to any of the cases in which this Court has found that the death sentence was disproportionate.

We also consider cases in which this Court has found the death penalty to be proportionate. Defendant was convicted based on premeditation and deliberation and under the felony murder rule. "The finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *judgment vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). Defendant also has a history of prior convictions for violent crimes, including one manslaughter, one assault with a deadly weapon with intent to kill which left the victim seriously disabled, and one assault with a deadly weapon inflicting serious injury on his child's grandmother whom he shot attempting to shoot the child's mother. This Court has deemed the (e)(3) aggravating circumstance, standing alone, to be sufficient to sustain a sentence of death. *State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995). The present case is more analogous to cases in which we have found the sentence of death proportionate than to those cases in which we have found the sentence disproportionate or to those cases in which juries have consistently returned recommendations of life imprisonment.

Defendant received a fair trial and capital sentencing proceeding, free from prejudicial error; and the death sentence in this case is not disproportionate. Accordingly, the judgment of the trial court is left undisturbed.

NO ERROR.