An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-38

NORTH CAROLINA COURT OF APPEALS

Filed:  2 September 2014

STATE OF NORTH CAROLINA

    v.

SAMUEL GIDEON,
    Defendant.

Wake County
No. 12 CRS 214535

Appeal by defendant from judgment entered 15 August 2013 by Judge Orlando F. Hudson in Wake County Superior Court.  Heard in the Court of Appeals 22 May 2014.

    *Roy Cooper, Attorney General, by Robert M. Curran, Special Deputy Attorney General, for the State.*

    *Richard J. Costanza for defendant-appellant.*

    DAVIS, Judge.

Samuel Gideon ("Defendant") appeals from his conviction for voluntary manslaughter.  On appeal, he argues that (1) he received ineffective assistance of counsel at trial; and (2) the trial court erred by allowing the introduction of inadmissible evidence during the sentencing phase of his trial.  After careful review, we dismiss Defendant's ineffective assistance of

counsel claim without prejudice and find no error in Defendant's trial.

## Factual Background

The State presented evidence at trial tending to establish the following facts: During the early morning hours of 15 January 2012, two men, Ronald Gaither and Terrell Hilliard, stole a GMC Envoy in Raleigh, North Carolina. They drove the stolen Envoy to an apartment building, broke into an apartment, and stole various video games and items of computer equipment. They then sped away, heading towards New Hope Road.

Abraham Melendez ("Abraham"); his brother, Samuel Melendez ("Samuel"); his cousin, Elezar Herrera ("Mr. Herrera"); and a woman named Alison Sanchez were traveling together down New Hope Road in a Hyundai Sonata when they encountered the speeding Envoy attempting to make a turn onto New Hope Road. The Envoy failed to make the turn and crashed onto the side of the road. After witnessing the accident, Abraham turned his vehicle around for the purpose of providing assistance to the occupants of the crashed vehicle.

At the accident scene, Abraham encountered two men, Defendant and Christopher Rochelle ("Mr. Rochelle"). Defendant and Mr. Rochelle had recently returned to Mr. Rochelle's

residence after playing pool. Shortly thereafter, they heard a loud noise that sounded like a "mixture of glass and wood and concrete all together breaking." Mr. Rochelle went outside to investigate and saw a man run around a sport utility vehicle (later determined to be the Envoy), jump into the vehicle, and "peel[] out." Mr. Rochelle — believing that his car had been burglarized — picked up a wrench from his front porch and proceeded to chase the SUV on foot in an attempt to ascertain its license plate number. Defendant followed behind on foot. As they approached the corner of Wallingford Drive and New Hope Road, they saw the crashed SUV on the side of the road.

At that point, Abraham's Sonata pulled up to the scene of the accident, and all four of its occupants exited the vehicle. Mr. Rochelle approached the Sonata, holding the wrench in his hand. He then began yelling: "[A]re you with them, are you with them[?]" Mr. Rochelle approached Mr. Herrera and raised the wrench at which point Mr. Herrera punched Mr. Rochelle in the face, causing him to fall to the ground. Abraham and Samuel then restrained Mr. Herrera in order to prevent a further confrontation, and Abraham retrieved his cell phone from the car so he could call 911.

While Samuel was still holding Mr. Herrera's arm, Defendant came from behind Mr. Rochelle and stabbed Mr. Herrera in the chest. Defendant then fled the scene while Abraham and Samuel helped Mr. Herrera into the back seat of the Sonata. Mr. Herrera was transported to a nearby hospital, where he died as a result of the stab wound.

On 29 October 2012, Defendant was indicted by a grand jury in Wake County for the murder of Mr. Herrera. The State gave notice that it would proceed on a charge of second-degree murder. The matter came on for a jury trial on 5 August 2013 in Wake County Superior Court.

At trial, Defendant testified on his own behalf and presented the following account of the events leading up to the stabbing: When the Sonata stopped at the scene of the accident, the four occupants "tore out of the truck" and started immediately yelling at Mr. Rochelle. Mr. Herrera rushed toward Mr. Rochelle and hit him in the face. Mr. Herrera and his friends then punched and kicked Mr. Rochelle until he fell to the ground in the fetal position. At that point, Mr. Herrera turned to Defendant and said: "Oh, you think you're the big guy . . . [y]ou're going to get it next. You're going down." Mr. Herrera then "struck [Defendant] a couple of times," causing

Defendant to "fear for [his] life." In an attempt to stop Mr. Herrera, Defendant retrieved a pocket knife from his right pocket. He then used the pocket knife to fend off Mr. Herrera and unintentionally stabbed him.

On 15 August 2013, the jury returned a verdict finding Defendant guilty of voluntary manslaughter. At sentencing, the jury found as an aggravating factor that Defendant had committed a probation violation during the ten-year period prior to the commission of the 15 January 2012 offense. Defendant was sentenced to an aggravated term of 105 to 138 months imprisonment. Defendant gave notice of appeal in open court.

**Analysis**

**I. Ineffective Assistance of Counsel**

During the direct examination of Defendant at trial, his trial counsel brought up the fact that Defendant had invoked his right to counsel during questioning by Detective Amanda Salmon ("Detective Salmon") following his arrest.

> Q. Do you remember talking to Detective Salmon briefly after you were first arrested?
>
> A. That's correct.
>
> Q. And you waived your right to counsel for a short time and answered some questions that she put to you, then later said you wanted a lawyer before you said any more, do

you remember that?

A. I do.

During the remainder of his testimony, including cross-examination, additional references were made to the fact that Defendant had asserted his right to counsel while being questioned.

On appeal, Defendant contends that he received ineffective assistance of counsel due to his trial counsel's reference to his invocation of his right to counsel and failure to object to the State's subsequent questioning on cross-examination regarding this subject.

To prevail on a claim for ineffective assistance of counsel,

> a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense. Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. Rodelo,* ___ N.C. App.___,___, 752 S.E.2d 766, 773 (2014) (internal citations and quotation marks omitted).

"In general, claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal." *State v. Stroud*, 147 N.C. App. 549, 553, 557 S.E.2d 544, 547 (2001), *cert. denied*, 356 N.C. 623, 575 S.E.2d 758 (2002). This is so because this Court is "without the benefit of information provided by defendant to trial counsel, as well as defendant's thoughts, concerns, and demeanor[,] that could be provided in a full evidentiary hearing on a motion for appropriate relief." *Id.* at 554–55, 557 S.E.2d at 547 (citation and quotation marks omitted and alteration in original). Ineffective assistance of counsel claims are only appropriately reviewed on direct appeal "when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Thompson*, 359 N.C. 77, 122–23, 604 S.E.2d 850, 881 (2004) (citation and quotation marks omitted), *cert. denied*, 546 U.S. 830, 163 L.Ed.2d 80 (2005).

Here, it is unclear from the present record whether Defendant's trial counsel elicited testimony about this subject as part of a trial strategy such as, for example, a desire to provide context for the responses that Defendant gave to

Detective Salmon before requesting an attorney. Accordingly, it is appropriate to dismiss Defendant's ineffective assistance of counsel claim without prejudice to his right to reassert it through a motion for appropriate relief. *See State v. al-Bayyinah,* 359 N.C. 741, 752-53, 616 S.E.2d 500, 509-10 (2005) (dismissing ineffective assistance of counsel claim asserted on direct appeal without prejudice because "[t]rial counsel's strategy and the reasons therefor [were] not readily apparent from the record, and more information [needed to] be developed to determine if defendant's claim" had merit), *cert. denied*, 547 U.S. 1076, 164 L.Ed.2d 528 (2006).[1]

## II. Sentencing Phase

At the sentencing phase of Defendant's trial, the State presented evidence concerning the aggravating factor that Defendant had been found in willful violation of his probation within 10 years of the commission of the 15 January 2012 offense. The State called as a witness Margaret Brewer ("Ms.

---

[1] As an alternative to his claim for ineffective assistance of counsel, Defendant asks this Court to review the trial court's admission of this testimony for plain error. However, it is well established that the plain error doctrine does not apply to the admission of evidence introduced or invited by the defendant. *See State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001) (holding that "a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review"), *disc. review denied*, 355 N.C. 216, 560 S.E.2d 141 (2002).

Brewer"), the judicial district manager for Wake County Probation and Parole. The State introduced three documents during Ms. Brewer's testimony: (1) a 14 February 2001 judgment entered in file number 00 CRS 62383 placing Defendant on supervised probation for assault on a female and resisting a public officer; (2) a probation violation report executed by probation officer Margaret Price in December 2001, alleging that Defendant had violated the terms and conditions of his probation; and (3) a revocation of probation form indicating that Defendant's sentence was activated by Judge Stafford Bullock in Wake County Superior Court on 18 March 2002.

During Ms. Brewer's direct examination, she was allowed to give the following testimony:

> Q. Ms. Brewer, using – and you weren't personally involved in Mr. Gideon's probation case; is that right?
>
> A. Not at the time of the revocation. I am familiar with the offender when he was under supervision under Erica Ward back in 2000.
>
> Q. That was more of a supervisory capacity?
>
> A. It was, actually I was a co-worker of Ms. Ward's at that time.
>
> Q. Using the documents to explain what happened in this particular case, could you tell us when was Mr. Gideon placed on

probation in this particular case, what date?

A. February 14, 2001.

Q. Okay. And on what date was he eventually revoked on his probation, I think that's going to be on State's Exhibit Number 24.

A. March 18, 2002.

Q. And how long – was looking at the judgment, that's State's Exhibit 22, how long was he supposed to be on probation if he had completed it?

A. 24 months of supervised probation.

Q. Okay. The probation revocation form that's State's Exhibit Number 24 has a box marked about the Defendant electing to serve the sentence, do you see that?

A. I do.

Q. Does that appear to be correct to you?

A. No.

Q. Could you explain why that is?

A. Offenses that were committed prior to January 1997, an offender could elect to serve their sentence. So, in other words, they could decide at any time that they no longer wanted to be under supervised probation and they could petition and go to court and get their suspended sentence activated and go to jail or prison. Any offense after January 1st, 1997, you could no longer elect to serve, that you actually had to be found in violation and either revoked or terminated. And so in this

particular case, based on the offense date, it would not be something that could have been ordered at that time for them to elect to serve.

Q. Okay. And were you working with the probation department during this time when that change in the law was made?

A. Yes.

Q. Is this something that was commonly occurring on these revocation forms?

A. Yes.

Q. Basically, if the offender was not electing to serve, but you saw this box checked, what was more than likely the actual procedure that happened?

Mr. Manning: I object to that.

The Court: Overruled.

The Witness: That the offender was revoked, and their time was activated.

Q. But would they do that –

Mr. Manning: Motion to strike the answer.

The Court: Motion denied.

Mr. Manning: This is triple hearsay on this, Your Honor, from this witness.

The Court: Motion denied.

Q. The – what is the procedure, what is done if an offender comes into court and actually admits the violation?

Mr. Manning: Objection.

The Court:     Overruled.

The Witness:   If they admit the violation, some type of modification or termination or revocation is then brought forth.

Mr. Manning:   Motion to strike the answer.

The Court:     Motion denied.

Q.   Is this same form that used [sic] in State's Exhibit Number 24, is that [the] same form that would be used in that circumstance if someone admitted their violation?

Mr. Manning:   Objection.

The Court:     Overruled.

The Witness:   If the Court revoked their probation, yes.

Mr. Manning:   Motion to strike the answer.

The Court:     Denied.

Mr. Saacks:    Thank you, ma'am.  I don't think I have anything further.

Defendant contends that the trial court erred during the sentencing phase of his trial by allowing a "former probation officer [Ms. Brewer] to offer testimony which contradicted the court record in an attempt to show [Defendant] violated a condition of his probation." Defendant argues that Ms. Brewer's testimony during the sentencing hearing was hearsay and constituted an improper lay opinion since Ms. Brewer was not

Defendant's probation officer and "did not have personal knowledge of the facts or circumstances surrounding the activation of his suspended sentence."

However, "[p]er statute, the Rules of Evidence do not apply at sentencing hearings." *State v. Sings*, 182 N.C. App. 162, 164, 641 S.E.2d 370, 371, *appeal dismissed and disc. review denied*, 361 N.C. 574, 651 S.E.2d 558 (2007). The "trial court has discretion to admit any evidence relevant to sentencing." *State v. Carroll*, 356 N.C. 526, 547, 573 S.E.2d 899, 913 (2002), *cert. denied*, 539 U.S. 949, 156 L.Ed.2d 640 (2003). Our Supreme Court has recently reaffirmed this principle, holding that "our Rules of Evidence, other than those concerning privileges, do not apply in proceedings for sentencing, or granting or revoking probation." *State v. Murchison*, ___ N.C. ___, ___, 758 S.E.2d 356, 358 (2014) (citation and quotation marks omitted).

In reaching its holding in *Murchison*, our Supreme Court found instructive its prior decision in *Carroll*. *Id.* at ___, 758 S.E.2d at 358. In *Carroll*, the defendant was found guilty of first-degree murder. During the sentencing phase, in an effort to prove aggravating factors, the State presented testimony from two witnesses: (1) a deputy clerk in Cumberland County; and (2) an expert in fingerprint identification.

*Carroll*, 356 N.C. at 545-46, 573 S.E.2d at 912. These witnesses testified that a judgment from Florida showed the defendant had a prior violent felony conviction and that the fingerprints contained in the Florida file matched the copy of the defendant's fingerprints contained in the Cumberland County file. *Id*.

On appeal, the defendant's counsel argued that this testimony was hearsay and that the court had erred by allowing the jury to consider and find an aggravating factor that was based solely on inadmissible hearsay. *Id*. at 545, 573 S.E.2d at 912. Our Supreme Court concluded that the "trial court has discretion to admit any evidence relevant to sentencing" and that the hearsay evidence was "reliable evidence relevant to the State's duty to prove its aggravating circumstances." *Id*. at 547, 573 S.E.2d at 913; *see also Sings*, 182 N.C. App. at 164, 641 S.E.2d at 371 (upholding trial court's admission of hearsay offered to prove existence of aggravating factor during defendant's sentencing).

Here, in an effort to prove the existence of an aggravating factor, the State offered testimony from Ms. Brewer to establish both that Defendant's sentence had been activated on 18 March 2002 and that the repeal of N.C. Gen. Stat. § 15A-1341(c),

effective 1 January 1997, eliminated a defendant's ability to elect to serve a prison sentence in lieu of completing his probation.

Therefore, even though page one of Defendant's revocation of probation form indicated that Defendant had voluntarily elected to serve his sentence instead of completing his probation, as Ms. Brewer explained, such a voluntary election by Defendant would not have been available to him under North Carolina law on 18 March 2002. Her testimony further established that after 1 January 1997, the only way that Defendant could have had his sentence activated would have been if the trial court had found him in violation of the conditions of his probation and revoked his probation. Therefore, we do not believe the trial court was precluded from allowing Ms. Brewer's testimony on this issue.

Moreover, we note that page two of Defendant's revocation of probation form contains a finding that "[D]efendant waived a violation hearing and admitted that [he] violated each of the conditions [of] [D]efendant's probation as set forth below." Therefore, this argument is overruled.

## Conclusion

For the reasons stated above, we (1) dismiss without prejudice Defendant's ineffective assistance of counsel claim; and (2) conclude that the trial court did not err in admitting Ms. Brewer's testimony.

DISMISSED IN PART; NO ERROR IN PART.

Judges HUNTER, JR. and ERVIN concur.

Report per Rule 30(e).