STATE OF NORTH CAROLINA v. BRYAN KEITH HESS

No. COA06-1413

(Filed 21 August 2007)

**Search and Seizure— investigatory stop—vehicle owned by
driver with suspended license—reasonable suspicion**

An officer had reasonable suspicion to make an investigatory
stop of a vehicle when he knew that defendant was the owner of
the vehicle and that defendant's license had been suspended. In
the absence of evidence to the contrary, it was reasonable to infer
that defendant was driving the vehicle, and the judge did not err
by denying defendant's motion to suppress in the resulting prose-
cution for driving while impaired.

Appeal by Defendant from order entered 14 July 2006 by Judge
Michael E. Beale in Rowan County Superior Court. Heard in the Court
of Appeals 21 May 2007.

*Attorney General Roy Cooper, by Special Deputy Attorney
General Hal F. Askins, for the State.*

*Haakon Thorsen for Defendant.*

STEPHENS, Judge.

On 15 May 2004, Officer Jarrett Doty of the Granite Quarry Police
Department was on patrol in an unmarked vehicle. At approximately
9:32 p.m., Officer Doty pulled his automobile "in behind a Pontiac
vehicle[.]" It was dark and Officer Doty could not determine the sex,
race, or ethnicity of the driver of the Pontiac, or how many individu-
als were riding inside. Officer Doty traveled behind the Pontiac for
approximately "[a] mile[,] . . . [m]aybe two miles" and did not observe
the driver of the vehicle commit any traffic violations or weave in the
lane of travel. Nevertheless, Officer Doty "ran the registration plate
that was attached to the rear of the vehicle" through a computer in his
patrol car. Officer Doty discovered that the vehicle was registered to
Defendant. He then "ran [Defendant's] license number from the regis-
tration information" and determined that Defendant's license had
been suspended. Once he had this information, but still not knowing
whether Defendant was driving the vehicle, Officer Doty activated the
blue lights on his patrol car and stopped the Pontiac. When he
approached the Pontiac, Officer Doty found that Defendant was oper-

ating the vehicle. As a result of the stop, Defendant was cited for driving while impaired and driving with a revoked license.

On 10 March 2005, Defendant moved to suppress "any and all statements and/or evidence which was obtained or received as a result of Defendant being stopped . . . without reasonable and articulable suspicion to believe that . . . Defendant was either committing a crime or about to commit a crime." A hearing on Defendant's motion was held before the Honorable Michael E. Beale in Rowan County Superior Court on 12 July 2006. After the hearing, in an order dated 14 July 2006, Judge Beale denied Defendant's motion to suppress. Upon preserving his right to appeal Judge Beale's decision, Defendant pled guilty to both charges. From the denial of his motion to suppress, Defendant appeals. For the reasons stated herein, we affirm the order of the trial court.

---

By his only assignment of error, Defendant asserts the trial court erred in determining that Officer Doty had reasonable suspicion to stop Defendant's vehicle. Contending to the contrary, he argues further that Officer Doty's investigatory stop violated Defendant's Fourth Amendment right to be free from unreasonable searches and seizures. Under the totality of the circumstances presented herein, we disagree.

We first observe that Defendant has not assigned error to any of the trial court's findings of fact. Therefore, our review of the order denying his motion to suppress "is limited to the question of whether the trial court's findings of fact, which are presumed to be supported by competent evidence, support its conclusions of law and judgment." *State v. Pickard*, 178 N.C. App. 330, 334, 631 S.E.2d 203, 206 (citation omitted), *appeal dismissed and disc. review denied*, 361 N.C. 177, 640 S.E.2d 59 (2006). "This Court must not disturb the trial court's conclusions if they are supported by the court's factual findings." *State v. McArn*, 159 N.C. App. 209, 211-12, 582 S.E.2d 371, 373-74 (2003) (citing *State v. Cooke*, 306 N.C. 132, 291 S.E.2d 618 (1982)). "However, the trial court's conclusions of law are reviewed *de novo* and must be legally correct." *State v. Hernandez*, 170 N.C. App. 299, 304, 612 S.E.2d 420, 423 (2005) (citing *State v. Fernandez*, 346 N.C. 1, 484 S.E.2d 350 (1997)).

In his order denying Defendant's motion to suppress, Judge Beale made the following uncontested findings of fact:

2. That one witness testified, . . . C.J. Doty, and the court is the sole judge of the credibility and weight of his testimony.

. . . .

4. That at 9:32 p.m. on the 15th day of May, 2004, Mr. Doty was on routine patrol in the town of Granite Quarry in an unmarked patrol car and was dressed in a regular police issued uniform.

. . . .

7. That it was dark and he had his headlights on when he got behind a Pontiac vehicle operated on Legion Club Road.

8. That Mr. Doty could not determine anything about the driver from behind that vehicle. That he was unable to determine either the sex or the race of the operator of that vehicle or how many people were in the vehicle.

9. That he observed no traffic violations or weaving or er[r]atic driving.

10. That he was able to observe the registration plate and ran the registration plate and determined that the vehicle was registered to one Bryan Keith Hess, the Defendant in this case. That he ran a license check on the license number that came up for Mr. Hess and he determined from that check that Mr. Hess'[s] license had been suspended.

. . . .

12. That upon making the observations found herein the patrolman initiated the stop by activating his blue light and the vehicle pulled over and stopped.

From these findings, Judge Beale concluded "[t]hat Officer Doty had a reasonable suspicion to stop the vehicle in question and make an investigatory stop" and "[t]hat none of the Defendant's constitutional rights, either State or Federal were violated in the making of this stop."

The Fourth Amendment protects private individuals from unreasonable governmental intrusions on the individual's liberty or property. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968). However, "[i]t is well-established that a law enforcement officer may temporarily detain a person for investigative purposes without violating the Fourth Amendment." *State v. Shearin*, 170 N.C. App. 222, 226, 612

S.E.2d 371, 375 (citing *Terry, supra*), *appeal dismissed and disc. review denied*, 360 N.C. 75, 624 S.E.2d 369 (2005). "An investigatory stop must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.'" *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (quoting *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979)). "When determining whether an officer had 'a reasonable suspicion to make an investigatory stop' . . . trial courts must consider the totality of the circumstances." *Shearin*, 170 N.C. App. at 226, 612 S.E.2d at 376 (quoting *State v. Willis*, 125 N.C. App. 537, 541, 481 S.E.2d 407, 410 (1997)).

The appellate courts of this State have yet to address the constitutionality of an investigatory stop based solely on an officer's knowledge that an automobile currently being operated is registered to an individual with a suspended or revoked driver's license. We thus find it instructive to examine decisions from other jurisdictions for guidance.

In *Village of Lake in the Hills v. Lloyd*, 591 N.E.2d 524, 526 (Ill. App. Ct. 1992), *appeal denied*, 602 N.E.2d 455 (Ill. 1992), the Illinois Court of Appeals held that

> [p]olice knowledge that an owner of a vehicle has a revoked driver's license provides a reasonable suspicion to stop the owner's vehicle for the purpose of ascertaining the status of the license of the driver. Common sense dictates that such information, even alone, is enough to provide a constitutional basis for stopping a vehicle or its occupants.

Similarly, in *State v. Pike*, 551 N.W.2d 919, 922 (Minn. 1996), the Minnesota Supreme Court held "that the knowledge that the owner of a vehicle has a revoked license is enough to form the basis of a 'reasonable suspicion of criminal activity' when an officer observes the vehicle being driven." However, Minnesota's high court limited the application of its holding to circumstances where, based on the information that the police officer was able to gather about the physical characteristics of the driver, it was reasonable to infer that the owner of the automobile was also the driver. *Id.*

Relying on *Village of Lake in the Hills, supra*, the New Hampshire Supreme Court held that when "an officer observed a vehicle, which he properly determined to be registered to an owner who had a suspended driver's license, being driven on a public roadway" and the "officer observed nothing that would indicate that the

driver was not the owner[,]" it "was reasonable for the officer to infer" that the owner of the vehicle was driving. *State v. Richter*, 765 A.2d 687, 689 (N.H. 2000). Additionally, in *People v. Jones*, 678 N.W.2d 627, 630 (Mich. Ct. App. 2004), the Michigan Court of Appeals held that

> [i]n the absence of evidence to the contrary, a police officer may reasonably suspect that a vehicle is being driven by its registered owner . . . [and that] [w]here information gleaned from a computer check provides a basis for the arrest or further investigation of the registered owner of the vehicle, a police officer may initiate an investigatory stop to determine if the driver is the registered owner of the vehicle.

In sum, our research reveals that when an officer knows that a vehicle being operated is registered to an owner with a suspended or revoked driver's license, the majority of jurisdictions have held that an officer has reasonable suspicion to make an investigatory stop, absent evidence that the driver is not the owner. *See, e.g., State v. Tozier*, 905 A.2d 836, 839 (Me. 2006) (holding that "[a]lthough it is possible that a driver under suspension could register a vehicle and that others . . . could drive it, it is reasonable for an officer to suspect that the owner is driving the vehicle, absent other circumstances that demonstrate the owner is not driving"); *accord State v. Mills*, 458 N.W.2d 395, 397 (Iowa Ct. App. 1990) (holding that "[i]t was reasonable to infer the vehicle was being driven by its owner given the absence of evidence to the contrary"); *accord State v. Panko*, 788 P.2d 1026, 1027 (Or. Ct. App. 1990) (holding that if an officer knows that the owner's driver's license is suspended, "he may make a stop . . . unless other circumstances put him 'on notice that the driver is not the vehicle's owner' ").[1] We are persuaded by the rationale of the majority of jurisdictions and thus adopt the holding of the majority of jurisdictions that when a police officer becomes aware that a vehicle being operated is registered to an owner with a suspended or revoked driver's license, and there is no evidence appearing to the officer that the owner is not the individual driving the automobile, reasonable suspicion exists to warrant an investigatory stop.

After careful review of these cases and the facts of the case before us, we hold that because Officer Doty knew Defendant was the

---

1. However, in *State v. Cerino*, 117 P.3d 876, 878 (Idaho Ct. App. 2005), the Idaho Court of Appeals held "that the mere observation of a vehicle being driven by someone of the same gender as the unlicensed owner is insufficient to give rise to a reasonable suspicion of unlawful activity."

owner of the Pontiac and that Defendant's license had been suspended, it was reasonable for Officer Doty, in the absence of evidence to the contrary, to infer that Defendant was driving the automobile. Based on this inference, reasonable suspicion existed for Officer Doty to make an investigatory stop to determine if Defendant was operating the vehicle. Furthermore, because the unchallenged findings of fact made by the trial court support this conclusion, the trial court did not err in denying Defendant's motion to suppress. Accordingly, the order of the trial court is affirmed.

AFFIRMED.

Chief Judge MARTIN and Judge STEELMAN concur.