STATE OF NORTH CAROLINA v. MAURICE SIMMONS, DEFENDANT

No. COA09-268

(Filed 5 January 2010)

**Search and Seizure— vehicle stop—white plastic grocery bag— cigar guts**

The trial court erred by denying defendant's motion to suppress marijuana found in a white plastic grocery bag in a passenger door storage compartment after defendant was stopped for not wearing a seat belt. The officer did not see or smell marijuana but asked what was in the bag and defendant responded "cigar guts." The record did no more than establish that defendant pos-

sessed a legal item without providing any indication that the item was being used in an unlawful manner.

Appeal by Defendant from judgment entered 15 September 2008 by Judge William Z. Wood in Forsyth County Superior Court. Heard in the Court of Appeals 2 September 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Richard E. Slipsky, for State.*

*Glenn Gerding, for defendant.*

ERVIN, Judge.

Defendant Maurice Simmons appeals from a judgment imposed by the trial court based upon his pleas of guilty to possession of marijuana with the intent to sell and deliver and felonious possession of marijuana and sentencing him to 24 months of supervised probation. On appeal, Defendant contends that the trial court erred by denying his motion to suppress evidence obtained during a search of his vehicle on the grounds that the investigating officer lacked probable cause to search a plastic bag contained in his vehicle. After careful consideration of the record in light of the applicable law, we are constrained to agree with Defendant's contention and award Defendant a new trial.

## Factual Background

On 21 July 2007, Defendant was driving a 1978 Pontiac on Silas Creek Parkway in Winston-Salem when he was stopped by North Carolina State Highway Patrol Officer J.M. Byrd (Trooper Byrd) for failing to wear a seat belt. In the course of checking the status of Defendant's license, Trooper Byrd discovered that it had been revoked. As a result, Trooper Byrd cited Defendant for failing to wear a seatbelt and driving while license revoked.

While issuing the citations, Trooper Byrd noticed a white plastic grocery bag sticking out of the storage holder on the passenger-side door of Defendant's vehicle. Trooper Byrd testified that the "[grocery bag] was sticking out in plain view from my vantage point. . . ." He further stated that he immediately became suspicious that the bag contained contraband because he had found contraband in that sort of container on at least three prior occasions. Since he was unable to see the contents of the bag, Trooper Byrd asked Defendant what the bag contained. Defendant responded that the bag contained "cigar guts."

After hearing Defendant's reference to "cigar guts," Trooper Byrd concluded that he had probable cause to search the bag for contraband. As a result, Trooper Byrd placed Defendant into his police vehicle for safety and contacted other troopers for assistance. Two troopers arrived and assisted Trooper Byrd in searching the vehicle. During the search, Trooper Byrd discovered that the white plastic bag contained marijuana.

On 21 July 2007, a Magistrate's Order was issued charging Defendant with felonious possession of marijuana and possession of marijuana with the intent to sell or deliver. On 24 March 2008, the Forsyth County grand jury returned a bill of indictment alleging that Defendant "unlawfully, willfully and feloniously did possess a controlled substance to wit: more than one and one-half ounces of marijuana" and "unlawfully, willfully and feloniously did possess with intent to sell and deliver a controlled substance, namely approximately 118 grams of marijuana." On 14 July 2008, Defendant filed a Motion to Suppress in which he sought the suppression of any evidence seized as a result of the search of his vehicle on the grounds that his vehicle "was unlawfully searched and property was seized by officers in violation of the Fourth Amendment to the United States Constitution and in violation of the North Carolina Constitution. . . ."

On 15 September 2008, Defendant's suppression motion came on for hearing before the trial court. After hearing the testimony of Trooper Byrd and the argument of counsel for Defendant and the State, the trial court denied the motion on the grounds that, "once the defendant said 'cigar guts,' I think the officer did have probable cause to see if there was any contraband associated with the cigar guts." After reserving his right to appeal the denial of his suppression motion as authorized by N.C. Gen. Stat. § 15A-979(b), Defendant entered pleas of guilty to felonious possession of marijuana and possession of marijuana with the intent to sell and deliver. Based upon Defendant's guilty pleas, the trial court consolidated the offenses in question for judgment and sentenced Defendant to a minimum of six and a maximum of eight months imprisonment in the custody of the North Carolina Department of Correction, and then suspended this sentence and placed Defendant on supervised probation for 24 months. Defendant noted an appeal to this Court from the trial court's judgment.

## Discussion

In evaluating the correctness of a trial court's decision granting or denying a motion to suppress, its findings of fact are treated as con-

clusive on appeal in the event that they are supported by competent evidence, even if the record contains evidence that would support a different finding. *State v. Downing*, 169 N.C. App. 790, 794, 613 S.E.2d 35, 38 (2005). In the event that the trial court's factual findings have adequate evidentiary support, the relevant question on appeal becomes whether the trial court's conclusions of law embody a correct legal standard and are supported by its factual findings. *State v. Coplen*, 138 N.C. App. 48, 52, 530 S.E.2d 313, 317, *cert. denied*, 352 N.C. 677, 545 S.E.2d 438 (2000). The trial court's conclusions of law are subject to *de novo* review on appeal. *State v. Mahaley*, 332 N.C. 583, 423 S.E.2d 58 (1992), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 649 (1995). Given that Defendant has failed to challenge any of the trial courts findings of fact as lacking sufficient record support, they are binding on appeal,[1] so that our review of the trial court's order denying Defendant's suppression motion is limited to determining whether the trial court's conclusion of law reflects a correct understanding of the applicable law and is supported by the trial court's findings of fact. *State v. Allison*, 148 N.C. App. 702, 704, 559 S.E.2d 828, 829 (2002).

In denying Defendant's suppression motion, the trial court found as a fact that:

Trooper J.M. Byrd stopped a two-tone 1978 Pontiac, a big car—it was, I think, blue and white—on Silas Creek Parkway here in Winston-Salem near the Hayworth-Miller Funeral Home. The reason he stopped the car was the driver-operator, who was the defendant, did not have a seatbelt or safety belt on.

He did find that the defendant was the operator or driver. He went to the driver's side of the vehicle, told the defendant that

---

1. In his brief, Defendant contended that the trial court's findings that Trooper Byrd "detained [Defendant] in handcuffs and searched the bag;" that, "[o]nce other officers got there, he placed defendant in the patrol vehicle and called for two other-or other troopers;" that "[t]wo of them arrived;" and that he "searched the vehicle and found marijuana in it" was contrary to the evidence since "Trooper Byrd testified that he placed Defendant in handcuffs and then placed him in the patrol car" and that, "[a]fter Defendant was in the patrol car[,] Trooper Byrd called other officers to the scene and did not search Defendant's car until after they arrived." However, given that the critical issue in this case is whether Defendant's comment that the plastic bag observed by Trooper Byrd contained "cigar guts" provided Trooper Byrd with probable cause to search the vehicle, any discrepancy between the evidence and the trial court's factual findings concerning the exact sequence of events in which Defendant was handcuffed, Defendant was placed into Trooper Byrd's patrol vehicle, additional law enforcement officers were called to the scene, and Defendant's vehicle was searched is not material to the outcome of this case.

he was citing him for not wearing a seatbelt. The defendant gave him his driver's license and registration. The defendant did not appear nervous.

That the trooper went back to the patrol car and used his computer to check the—used either his computer or radio to check the status of the defendant's driver's licen[s]e and found that the defendant's driver's license was revoked.

Thereafter, he prepared a citation charging the defendant with a seatbelt violation and driving with license revoked. He went back to the driver's side of the defendant's vehicle. Defendant was still behind the steering wheel on that side.

He gave the citations to the defendant. Sometime during the second visit to the driver's side of the defendant's vehicle he looked at—it might have been before he gave the defendant the citations or it might have been after he gave him the citation, but he observed a white grocery bag–or white plastic grocery bag in the door on the passenger's side of the vehicle in a slot that was approximately 18 inches wide, going down the door from front to back, and about three to four inches from the inside of the car to the outside of the slot.

He asked—it was a white plastic grocery bag that, based on his experience, three prior arrests at least-or three prior seizures of marijuana, he had seen marijuana contained in similar grocery bags.

He asked the defendant what was in the bag because he was suspicious that the bag contained contraband, that—he'd found contraband, not marijuana, but contraband in that sort of bag or container on at least three prior occasions.

He asked again the defendant, "what's in the bag?" The answer from the defendant was "cigar guts." The officer took this to mean tobacco that had been removed from a cigar.

He had in the past seized marijuana with cigars. And based on his training he had heard-or learned that marijuana was sometimes placed inside cigars for the purpose of smoking the cigars. He mentioned Philly blunts as being what these were called. He could not think of any other reason to gut a cigar.

Thereafter, he felt that he had probable cause to search the bag. He detained [Defendant] in handcuffs and searched the bag.

STATE v. SIMMONS

[201 N.C. App. 698 (2010)]

Once two other patrol officers got there, he placed the defendant in the patrol vehicle and called for two other—or other troopers. Two of them arrived. He searched the vehicle and found marijuana in it.

Based on this, the first—let me see if there's anything else on cross. He could not see in the bag, noticed no smell of contraband. The bag was stuck down in the passenger's-side door console.

And marijuana and cigars are sometimes associated, but not all times, based on the officer's training and experience. The bag was in plain view, but its contents were not in plain view. The contents of the bag, from what the officer said, could not be more than three to four inches wide, because that was the width of the slot that it was placed in.

He was suspicious of the bag, and then he felt that the statement, "cigar guts," was the—gave him probable cause to search the bag. Although he was suspicious and pretty much knew what was in the bag when he first saw it, he did not feel that he had grounds to search until he heard the words "cigar guts."

Based upon these findings of fact, the trial court made the following conclusion of law:

And, [Defense counsel], if the officer had searched the first time he saw the bag, I'd be allowing your motion. But once the defendant said "cigar guts," I think the officer did have probable cause to see if there was any contraband associated with the cigar guts.

The motion is denied. Again, without the statement "cigar guts," I think it would probably be a good motion. Very close.

Thus, the trial court essentially concluded that, once Defendant stated that the bag that Trooper Byrd observed in Defendant's vehicle contained "cigar guts," he had probable cause to search the vehicle in question.

The fundamental issue[2] in dispute between the parties is whether Defendant's statement to Trooper Byrd to the effect that the plastic

2. The parties engage in considerable discussion in their briefs about the extent, if any, to which Defendant was arrested prior to the time at which Trooper Byrd searched Defendant's Pontiac. However, since both parties agree that the ultimate issue before the Court is whether Trooper Byrd's warrantless search and the resulting

bag that Trooper Byrd observed in Defendant's Pontiac contained "cigar guts" provided Trooper Byrd with probable cause to search Defendant's vehicle.[3] "A search of a vehicle on a public roadway or public vehicular area is properly conducted without a warrant as long as probable cause exists for the search." *State v. Holmes*, 142 N.C. App. 614, 621, 544 S.E.2d 18, 22, *cert. denied*, 353 N.C. 731, 551 S.E.2d 116 (2001). An officer, in the exercise of his duties, has probable cause to search a vehicle if he or she has " 'a belief, reasonably arising out of the circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction.' " *State v. Martin*, 97 N.C. App. 19, 28, 387 S.E.2d 211, 216 (1990) (quoting *United States v. Ross*, 456 U.S. 798, 805, 72 L. Ed. 2d 572, 581 (1982) (quoting *Carroll v. United States*, 267 U.S. 132, 149, 69 L. Ed. 543 (1921)). As a result, the ultimate issue that we must resolve is whether information tending to show that a suspect is in possession of "cigar guts," without more, provides probable cause for a search of the suspect's vehicle.

The record clearly establishes, consistent with the trial court's findings of fact, that Trooper Byrd did not see or smell marijuana or any other contraband at the time that he looked inside Defendant's car. Instead, his decision to search Defendant's vehicle was motivated entirely by his understanding of the meaning of the expression "cigar guts." Trooper Byrd testified that:

> part of our training and experience is to listen to people who use marijuana, the way they talk, how they describe how they use it. You know, I just have been around folks that know. You know, you hear it in the rap songs. You hear it in all the videos and everything, Philly blunts, you know, talking about marijuana, talking about gutting cigars with marijuana.

> So, I mean, that statement to me, along with the observation of the bag, which, you know, in the past I had found to contain contraband, in my mind raised it to the level of plain-view search.

seizure of the marijuana which Defendant plead guilty to possessing was supported by the requisite probable cause and since the State does not appear to argue that Trooper Byrd's search of Defendant's vehicle should be treated as an investigatory detention rather than a "full blown" search, we do not believe that it is necessary for us to resolve the issue of whether Trooper Byrd arrested Defendant or merely subjected him to an investigatory detention at the time that he handcuffed him and placed him in his patrol vehicle.

3. The validity of Trooper Byrd's initial decision to stop Defendant for operating a vehicle without wearing a seat belt and driving while license revoked has not been challenged on appeal.

According to Trooper Byrd, based on his "training and experience, there's only one reason to gut cigars" and "[t]hat's to place contraband in it." On the other hand, Trooper Byrd testified that the term "cigar guts" means tobacco. Put another way, the expression "cigar guts" refers to the tobacco inside a cigar as compared to the wrapper. Trooper Byrd acknowledged on cross-examination that there is nothing unlawful about possessing "the tobacco inside of the cigars." Trooper Byrd also admitted that, prior to this incident, he had never seized cigars containing contraband. Even so, he claimed "that[,] sometimes they do coincide" and that, on "some" occasions, he had seized marijuana in the vicinity of cigars.

The circumstances surrounding a particular seizure must be "viewed as a whole through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Green*, 146 N.C. App. 702, 707, 554 S.E.2d 834, 836 (2001) (citations omitted). As Trooper Byrd admitted, the possession of "cigar guts" or loose tobacco is not illegal in and of itself. As a result, the information available to Trooper Byrd sufficed to support a reasonable belief that Defendant's vehicle contained contraband or evidence of a crime only if "cigar guts" and contraband are so inherently interrelated that the mere presence of "cigar guts," without more, suffices to establish a reasonable probability that contraband will be present as well.

Although the State has cited a number of cases in its brief involving the presence of loose tobacco, *State v. Jacobs*, 162 N.C. App. 251, 253, 590 S.E.2d 437, 439 (2004) (stating during the recitation of the facts that the investigating officer, while examining the interior of a car, recovered a bundle of bills and noticed an odor of marijuana and the presence of loose tobacco that the officer believed to have come from hollowed-out cigars used to smoke marijuana); *People v. Shabazz*, 301 App. Div. 2d 412, 413, 755 N.Y.S.2d 20, 22 (2003) (holding that the trial court properly denied the defendant's motion to suppress the search of a car since a bag that had been thrown from the car contained a cigar that had been modified for the purpose of smoking marijuana and since loose tobacco or marijuana could be seen on the floorboard of the car); *People v. Mays*, 190 Misc. 2d 310, 315-17, 738 N.Y.S.2d 152, 157-58 (2001) (holding that a suppression motion should be denied since the defendant showed signs of impairment, since defendant was parked near a nightclub which was "a problem" at 4:00 a.m., and since there was a pile of loose tobacco in defendant's car), the parties have not provided us with any authority tending to show that the mere presence of "cigar guts," standing alone, is suffi-

cient to justify a finding of probable cause. Instead, the available decisions tend to show merely that the presence of loose tobacco, along with other factors, may suffice to support a valid search and seizure. Thus, given that all of the cases dealing with loose tobacco are factually distinguishable from this case, we have no choice except to attempt to decide this case on the basis of general principles of search and seizure law.

Although our review of the record in light of the applicable law forces us to agree with the trial court's determination that this is a close case, we believe, on balance, that Defendant's statement that the plastic bag contained "cigar guts," without more, does not suffice to establish the probable cause necessary to support a search of Defendant's vehicle. Although Trooper Byrd testified that cigars from which the tobacco has been removed and replaced with marijuana had become a popular means of consuming controlled substances, that evidence tended to establish the existence of a link between the presence of hollowed out cigars and the presence of marijuana rather than the existence of a link between the presence of loose tobacco and the presence of marijuana. Furthermore, the record is completely devoid of any evidence tending to show that Defendant was stopped in a drug-ridden area or at an unusual time of day or that Trooper Byrd had any basis, apart from Defendant's admission that the plastic bag contained "cigar guts," for believing that Defendant had been involved in the manufacture, use, or distribution of "Philly Blunts." Thus, reduced to its essence, the record does no more than establish that Defendant possessed a legal item without providing any indication that this item was being used in an unlawful manner. Although "it is well settled that the probable cause determination does not require hard and fast certainty by an officer, but involves more of a common-sense determination," *State v. Briggs*, 140 N.C. App. 484, 493, 536 S.E.2d 858, 863 (2000), a finding of probable cause must be supported by more than mere suspicion. After careful consideration, we are unable to conclude that Defendant's admission that the plastic bag that Trooper Byrd observed in his vehicle contained "cigar guts," without more, sufficed to support a finding of probable cause to believe that Defendant's Pontiac contained contraband or evidence of a crime. As a result, since the trial court erred by reaching a contrary conclusion and denying Defendant's suppression motion, we conclude that Defendant is entitled to a new trial.

NEW TRIAL.

Judges GEER and STROUD concur.