IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-944

Filed 3 December 2024

Orange County, No. 20CRS52059

STATE OF NORTH CAROLINA

v.

KEVIN BURNETT, Defendant.

Appeal by defendant from order entered 9 May 2023 by Judge Alyson A. Grine in Orange County Superior Court. Heard in the Court of Appeals 12 June 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General J. Aldean Webster, III, for the State-appellee.*

*Mr. Darren Jackson, for defendant-appellant.*

GORE, Judge.

Kevin Burnett ("defendant") is appealing his conviction for Possession of a Firearm by a Felon. Defendant argues several of the trial court's findings of fact are not supported by competent evidence. Further, defendant argues that the trial court erred in denying his motion to suppress because the search of the vehicle was unconstitutional. Upon review, we affirm the denial of the motion to suppress.

I. **Background**

On the evening of 16 October 2020, Orange County Sheriff Deputy R.B. Triplett ("Deputy Triplett") noticed an inoperable tag light above the rear license plate of a vehicle at a gas station. Deputy Triplett ran the license plate number of

the vehicle while an occupant of the vehicle was pumping gas. Deputy Triplett learned the vehicle's registered owner, defendant, had a suspended license. It was unclear to Deputy Triplett at the gas station whether defendant was the driver of the vehicle.

Deputy Triplett initiated a traffic stop based on the vehicle's inoperable tag light and because the registered owner had a suspended license. Two additional Orange County deputies, Lieutenant B.M. Lassiter and Deputy Ashley, were present at the traffic stop as cover vehicles. Deputy Ashley's patrol vehicle contained a K-9 unit. All involved deputies were a part of a special Orange County "Strike Team" that investigates narcotics with K-9 units. Each deputy wore a Body Worn Camera ("BWC") that recorded the traffic stop.

When the deputies approached the vehicle at the traffic stop, they learned that defendant's daughter, Shantese Burnett ("Shantese"), was the driver. Deputy Triplett stated the two reasons for the traffic stop and asked for her license. Shantese admitted to the deputies that she did not have a license. Deputy Triplett returned to his patrol vehicle to write a citation for the unlicensed driver, Shantese. Lieutenant Lassiter and Deputy Ashley remained by defendant's vehicle. Defendant was seated in the front passenger seat and appeared intoxicated.

While Deputy Triplett was writing the citation in his patrol car, Lieutenant Lassiter discussed with Deputy Triplett how they wanted to proceed with the traffic stop. Lieutenant Lassiter stated the occupants "would be a handful" and defendant

was "extremely intoxicated." Deputy Triplett radioed for backup officers, who arrived shortly after the radio call. While Deputy Triplett was still in his patrol vehicle preparing the citation, all occupants exited defendant's vehicle at the request of the other officers. At Deputy Triplett's request, Deputy Ashley initiated his K-9 to sniff the vehicle. The K-9 positively alerted for narcotics on the passenger side of the vehicle. Defendant admitted that his friend had marijuana in his car two days prior, but defendant had thrown it out. The deputies searched the vehicle. They did not find drugs in defendant's vehicle, but they found a gun in the passenger-side glove compartment. The deputies arrested defendant for possession of a firearm by a felon. After the vehicle search and defendant's arrest, Shantese was issued a No Operator's License citation by Deputy Triplett. No citation was written for the inoperable tag light.

Defendant was indicted on 22 March 2021 by an Orange County grand jury for Possession of a Firearm by a Felon. On 28 October 2022, defendant filed a motion to suppress evidence seized from the search of defendant's vehicle during the traffic stop. Following a suppression hearing on 8 May 2023, the trial court entered a written order denying the motion. Defendant subsequently entered a guilty plea pursuant to *Alford* and reserved the right to appeal. The court sentenced defendant to 13 to 25 months' imprisonment but suspended the sentence to 24 months of supervised probation. Defendant timely appealed pursuant to N.C.G.S § 15A-979(b) on 9 May 2023.

## II.   Standard of Review

The standard of review for a motion to suppress consists of two parts.  First, this Court must determine whether competent evidence supports the trial court's findings of fact.  *State v. Wainwright*, 240 N.C. App. 77, 83–84 (2015).  If supported by competent evidence, findings of fact are treated as binding on appeal, even if evidence is conflicting.  *State v. Simmons*, 201 N.C. App. 698, 700–01 (2010).  Second, this Court reviews whether the findings of fact "support the trial court's conclusions of law."  *State v. Brooks*, 337 N.C. 132, 141 (1994).  The conclusions of law are reviewed de novo.  *Simmons*, 201 N.C. App. at 701.  Under de novo review, this Court considers the "legal conclusion[s] anew and freely substitute[s] [its own] judgment for that of the trial court."  *State v. Campola*, 258 N.C. App. 292, 298 (2018) (citation omitted).

## III.   Discussion

### A.  Findings of Fact

Defendant contends that eight of the trial court's factual findings are unsupported by competent evidence.  Defendant challenges one oral finding of fact made by the court, but "as a general proposition, the written and entered order or judgment controls over an oral rendition of that order or judgment."  *In re O.D.S.*, 247 N.C. App. 711, 721 (2016).  Additionally, Defendant challenges seven findings of fact ("FOF") in the court's written order:

2. Deputy Triplett stopped the vehicle because the registered owner, Kevin Burnett ("the Defendant"), had a suspended driver's license and because the vehicle did not have an operable tag light.

. . .

6. While in his patrol car, Deputy Triplett performed tasks including the following: checked the status of Ms. Burnett's driver's license in his data base, inspected the vehicle registration card, checked the identifying information provided by all of the occupants of the car to make sure it was valid, and prepared a handwritten traffic citation.

. . .

9. At approximately 10:53 pm, Deputy Triplett is still seated in his patrol car, looking at court dates. Lieutenant Lassiter approaches and tells him "we're going to probably have our hands full . . . he is drunk, drunk, raising all kinds of . . . ." Deputy Triplett radios for backup[.] The interaction takes less than a minute.

10. At approximately 10:57 pm, Deputy Triplett was still seated in his patrol car conducting his investigation when Lieutenant Lassiter approached the driver's side of Deputy Triplett's patrol car and provided an update that took approximately 24 seconds.

11. The update that Lieutenant Lassiter provided to Deputy Triplett included information that Lieutenant Lassiter was going to have Deputy Ashley "run a dog" or have his canine partner sniff the Silver Infiniti. Lieutenant Lassiter also said that the Defendant appeared "extremely intoxicated" and that the occupants of the Infiniti were "probably going to be a handful" so he wanted more people.

12. Shortly after the update, backup officers arrived from the Orange County Sheriff's Department.

. . .

14. A deputy patted down the Defendant.

### 1. *Evidence Competency*

"Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *City of Asheville v. Aly*, 233 N.C. App. 620, 625

(2014) (citation omitted). As previously stated, findings of fact are binding on appeal if supported by competent evidence, even if a different outcome could be reached. *Simmons*, 201 N.C. App. at 700–01. "The trial court's findings upon conflicting evidence are accorded great deference upon appellate review." *State v. Ford*, 194 N.C. App. 468, 476 (2008) (citation omitted). The trial court "is in the best position to resolve" evidentiary conflicts. *State v. Williams*, 362 N.C. 628, 632 (2008) (citation omitted).

The inoperable tag light in FOF No. 2 is supported by video of the traffic stop obtained from Deputy Triplett's and Deputy Ashley's BWC. When Deputy Triplett approached the vehicle's driver, he stated the reason for conducting the traffic stop was due to an inoperable tag light. Deputy Triplett also testified that there was an inoperable tag light on defendant's vehicle. Thus, there is competent evidence to support FOF No. 2.

FOF No. 6 states that Deputy Triplett checked the status of licenses in his database, inspected the vehicle registration card, and prepared a handwritten traffic citation while in his patrol vehicle during the traffic stop. This factual finding is supported by Deputy Triplett's BWC exhibit in which he performs the various tasks as stated in FOF No. 6, prior to issuing the written citation. Additionally, Deputy Triplett's testimony in the record states the actions he took while in the patrol vehicle. While Deputy Triplett may have done a few tasks beyond what the court found, they

were minimal and did not alter FOF No. 6. There is competent evidence to support FOF No. 6.

The length of the interactions described in FOF No. 9 is supported by the video footage from Deputy Triplett's BWC. In the video, it is shown that Deputy Triplett's and Lieutenant Lassiter's conversation took less than one minute.

Similarly, the length of the interaction in FOF No. 10 is supported by the video footage from Deputy Triplett's BWC. The update with Lieutenant Lassiter of what Deputy Triplett wanted to do with the vehicle occupants took approximately twenty-four seconds in the video footage.

FOF No. 11 and FOF No. 12 are supported by BWC video footage. Within the video footage, the deputies discussed defendant's intoxication level, that defendant and the other vehicle occupants "would be a handful," and their decision to have the K-9 dog "sniff" the vehicle. Even though the court made a clerical error by switching the officers' names, this does not substantively disrupt the finding. *See Bank of Hampton Rds. v. Wilkins*, 266 N.C. App. 404, 407–08 (2019) (a clerical error that occurs from writing or copying the record does not affect the substantial rights of a party and does not invalidate a finding).

Finally, defendant argues that FOF No. 14 is not explained in testimony; however, we determine the finding is supported by competent evidence. The footage from Deputy Triplett's BWC shows defendant raising his arms above his head after exiting the vehicle at the request of the deputies.

The trial court was in the best position to resolve any evidentiary conflict in its factual findings, even if a different conclusion could have been reached. *Williams*, 362 N.C. at 632. The challenged findings of fact made by the trial court are supported by competent evidence, the BWC video footage, and witness testimony. Because the challenged findings are supported by competent evidence, they are binding on appeal.

**B. Constitutionality of the Vehicle Seizure**

Defendant challenges ten of the trial court's conclusions of law. Even if the findings of fact "are supported by competent evidence" and are binding on appeal, the trial court's conclusions of law are still "fully reviewable" by this Court. *Ford*, 194 N.C. App. at 476.

Defendant argues that the traffic stop was unconstitutional under the United States Constitution and the North Carolina Constitution because (1) the original stop was not supported by reasonable suspicion, (2) the officers lacked reasonable suspicion to extend the traffic stop, and (3) the stop was illegally prolonged. The challenged conclusions of law ("COL") are:

> 5. The traffic stop was a lawful seizure supported by reasonable suspicion.
> . . .
>
> 7. The length of time it took Deputy Triplett to complete the investigation and citation following the traffic stop, approximately 18 minutes, was not unreasonable.
>
> 8. Deputy Triplett was conducting permissible checks and ordinary inquiries incident to a traffic stop and diligently investigating the traffic stop in his patrol car until approximately 11:03pm.

9. No unlawful extension of the traffic stop took place when Lieutenant Lassiter approached Deputy Triplett and told him the Defendant was impaired and belligerent and backup was needed, and Deputy Triplett radio[e]d for backup, an interaction that lasted less than a minute and took place when Dep[u]ty Triplett was seated in his patrol car investigating the traffic stop.

10. No unlawful extension of the stop took place when Lieutenant Lassiter gave Deputy Triplett an update that lasted approximately 24 seconds while Dep[uty] Triplett was seated in his patrol car investigating the traffic stop.
. . .

13. Law enforcement officers developed reasonable suspicion of drug activity to extend the stop and search the vehicle where the Defendant appeared intoxicated, the canine alerted on the vehicle, and the Defendant told officer that he had a history of drug use and his friend recently had a "blunt" in the car.
. . .

15. Law enforcement officers developed reasonable, articulable suspicion to extend the stop while Deputy Triplett was still addressing the traffic violation that was the original mission of the stop.
. . .

18. The extension of the stop beyond the time required to complete the mission was justified by new reasonable suspicion of criminal conduct and was lawful.

19. The State established by a preponderance of the evidence that the challenged evidence was lawfully obtained and admissible.

20. Defendant's rights under the United States and North Carolina Constitutions and North Carolina statutes were not violated.

The Fourth Amendment of the United States Constitution provides an individual right to be protected from unreasonable searches and seizures by the government and is applied to the states through the Fourteenth Amendment. *State*

*v.* Watkins, 337 N.C. 437, 441 (1994). Similarly, this right is also afforded specifically in Article I, § 20 of the North Carolina Constitution, which states "[g]eneral warrants . . . to search . . . without evidence of the act committed, or to seize any person or persons not named . . . are dangerous to liberty and shall not be granted." "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few . . . established and well-delineated exceptions." *State v. Fizovic*, 240 N.C. App. 448, 452 (2015) (citation omitted).

### 1.  *Reasonable Suspicion of Criminal Activity*

One of the well-delineated exceptions that allows warrantless searches was established in *Terry v. Ohio*, 392 U.S. 1 (1968).  The *Terry* exception allows law enforcement to conduct warrantless investigative searches and seizures by briefly detaining a person.  *State v. Tripp*, 381 N.C. 617, 632 (2022).  The officer must have a reasonable, articulable suspicion.  *Id.*  Reasonable suspicion is a low threshold, based upon a totality of the circumstances.  *See State v. McClendon*, 350 N.C. 630, 637 (1999).  Law enforcement officers need only reasonable suspicion that criminal activity "may be underway" to conduct an investigative seizure.  *State v. Barnard,* 184 N.C. App. 25, 29 (2007).  If an officer observes a traffic violation, he has reasonable and articulable suspicion to make a traffic stop.  *State v. Alvarez*, 385 N.C. 431, 433 (2023).  An officer's investigative seizure that is supported by reasonable suspicion is limited to addressing the purpose of the individual's detention to either

confirm or dispel the officer's reasonable suspicion. *State v. Wright*, 290 N.C. App. 465, 473–74 (2023).

Defendant challenges COL Nos. 5, 19, and 20 on the basis that the officer lacked reasonable suspicion to stop the vehicle. Here, Deputy Triplett's initial suspicion arose from an inoperable tag light above the license plate of defendant's vehicle. Once Deputy Triplett ran the license plate, he discovered the registered owner of the vehicle had a suspended license. Under the *Terry* exception, Deputy Triplett established the requisite reasonable suspicion when he observed the traffic violation; thus, he was allowed to conduct an investigatory seizure based on that suspicion. His investigatory seizure was limited to addressing the reasonable suspicion that prompted the traffic stop and to either confirm or dispel that suspicion. *Id.* at 474.

Moreover, an officer who is aware of a vehicle that is registered to an unlicensed owner has reasonable suspicion to conduct a traffic stop. *State v. Hess*, 185 N.C. App. 530, 534 (2007). The officer may only conduct the traffic stop on this basis if they do not know who is driving the vehicle. *Id.* In *Hess*, the deputy was unable to identify who was driving the vehicle that was registered to an unlicensed owner. *Id.* at 530–31. This Court determined it was reasonable for the deputy to infer the unlicensed registered owner was driving the vehicle, "absen[t] . . . evidence to the contrary." *Id.* at 535.

Because Deputy Triplett could not tell who was operating defendant's vehicle at the time he ran the license plate, he had permissible reasonable suspicion pursuant to *Hess* to stop the vehicle. Therefore, Deputy Triplett lawfully conducted a traffic stop based upon reasonable suspicion that defendant was driving with a suspended license. Beyond this, Deputy Triplett also had reasonable suspicion to conduct a traffic stop on the basis that the vehicle had an inoperable tag light.

## 2. *Length of the Traffic Stop*

The investigative seizure based on an officer's reasonable suspicion is also limited in its duration. *State v. Bullock*, 370 N.C. 256, 257 (2017). The seizure is limited to the amount of time "necessary to accomplish the mission . . . unless reasonable suspicion of another crime, [or traffic violation,]" arises before the original mission is completed. *Id.* The amount of time necessary in a traffic stop "includes ordinary inquiries incident to the traffic stop." *Id.* (citation omitted). "Once the original purpose of the stop [is] addressed, there must be grounds which provide a reasonable and articulable suspicion . . . to justify further delay." *State v. Falana*, 129 N.C. App. 813, 816 (1998).

Defendant challenges COL Nos. 18, 19, and 20 on the grounds that the officers lacked reasonable suspicion to continue the traffic stop once they determined defendant was not driving the vehicle. As provided in FOF No. 2, the original mission for Deputy Triplett's traffic stop of defendant's vehicle was to address the inoperable tag light and determine whether defendant was operating the vehicle with a

suspended license. However, as stated in FOF No. 3, before the original mission was complete, Shantese admitted to the deputies that she was driving without a license. Her statement provided the deputies with additional "reasonable and articulable suspicion . . . to justify further delay" of the traffic stop. *Id.* Therefore, the Orange County deputies developed additional reasonable suspicion to lawfully extend the traffic stop beyond the original mission, because of this additional traffic violation.

### 3. *Prolonging a Traffic Stop*

As stated above, the United States and North Carolina Constitutions protect an individual from unreasonable searches and seizures, apart from a few "well-delineated exceptions" that allow for warrantless searches and seizures. *Fizovic*, 240 N.C. App. at 452. The warrantless seizure is limited in its duration. *Bullock*, 370 N.C. at 257. Defendant challenges COL Nos. 7, 8, 9, 10, 13, 15, 18, 19, and 20, on grounds that the traffic stop was illegally prolonged, making it unconstitutional.

In COL No. 7, the court indicated that the investigatory stop that lasted approximately 18 minutes was not unreasonable. The court also indicated in COL No. 15, that the officers developed reasonable suspicion to extend the stop since Deputy Triplett was still addressing the traffic violation. While Deputy Triplett was writing the citation for driving without a license in his patrol vehicle, the other deputies used the K-9 unit to search the vehicle, as stated in FOF Nos. 15 and 16.

A K-9 unit may be deployed without any level of individualized suspicion but may not prolong a traffic stop. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005). "The

tolerable duration of . . . the traffic-stop [is] . . . to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Because Deputy Triplett was still writing the traffic citation while the K-9 sniffed the vehicle, the use of the K-9 unit was within the "tolerable duration" of the stop to address any related safety concerns. *Id*.

Defendant attempts to distinguish the present case from *State v. France*; however, the facts in *France* are analogous to the present case. 279 N.C. App. 436 (2021). In *France*, an officer, who was part of a "street crimes unit," conducted a traffic stop for a broken taillight. 279 N.C. App. at 437. After learning the driver did not have a driver's license, the officer requested a K-9 unit come to the traffic stop location. *Id*. While the officer was in her patrol car drafting the driver's citation, the K-9 unit arrived and investigated the vehicle. *Id*. at 438. The K-9 positively alerted for narcotics. *Id*. The unlicensed driver was arrested for various drug offenses based on the evidence obtained from the vehicle search after the positive alert from the K-9 unit. *Id*. at 438–39. The use of the K-9 unit was permissible because, although the request for a [K-9] sniff was unrelated to the reasons for the traffic stop, the request "did not measurably extend the duration of the stop." *Id*. at 443.

Here, the K-9 unit was at the scene from the start of the traffic stop. While it was unrelated to the purpose of the traffic stop, which was to address the unlicensed driver and inoperable tag light, the K-9 unit was deployed while Deputy Triplett was still addressing the traffic violation. The K-9 unit did not "measurably extend the

duration of the [traffic] stop." *Id.* The K-9 unit investigated the vehicle while Deputy Triplett was still in his patrol vehicle writing a citation for the unlicensed driver, like the officer in *France.* While the K-9 unit was not used to accomplish the original mission of the traffic stop, the use of the K-9 did not unconstitutionally prolong the stop. The trial court's conclusions of law are supported by the findings of fact and correctly state that the extension of the traffic stop was constitutional.

The Orange County deputies had lawful reasonable suspicion to conduct a traffic stop of the vehicle based on an inoperable tag light and a registered owner with a suspended license. Shantese's confession to the deputies that she did not have a license provided the officers with further reasonable suspicion to extend the traffic stop. Because Deputy Triplett was still preparing the daughter's citation, the K-9 unit did not measurably prolong the stop. The trial court's findings of fact support its conclusions of law. Therefore, the trial court did not err by denying defendant's motion to suppress the evidence discovered during a lawful search of the vehicle.

## IV.    **Conclusion**

For the foregoing reasons, the trial court did not err by denying defendant's motion to suppress.


AFFIRMED.

Chief Judge DILLON and Judge THOMPSON concur.