STATE v. HERNANDEZ

[227 N.C. App. 601 (2013)]

STATE OF NORTH CAROLINA
v.
RENE REYES HERNANDEZ

STATE OF NORTH CAROLINA
v.
DAWN MICHELLE DAVIS

No. COA12-924

No. COA12-1131

Filed 4 June 2013

1. **Appeal and Error—issue not reached—alternative request for writ of certiorari granted**

   The Court of Appeals allowed defendant Davis' request for a writ of *certiorari* pursuant to N.C. R. App. P. 21(a) in a drug case, and thus, did not reach the issue of whether defendant's appeal was subject to dismissal for having been taken from the order denying her suppression motion instead of from the final judgments.

2. **Appeal and Error—preservation of issues—switching theories on appeal not allowed**

   Although defendants contended that the trial court erred in a drugs case by denying their motions to suppress evidence seized from a motor vehicle owned by defendant Davis and operated by defendant Hernandez and a residence occupied by defendant Davis, a criminal defendant is not entitled to advance a particular theory in the course of challenging the denial of a suppression motion on appeal when the same theory was not advanced in the court below.

3. **Constitutional Law—effective assistance of counsel— dismissal of claim without prejudice**

   Defendant Davis' ineffective assistance of counsel claim was not ripe for consideration on direct appeal and was dismissed without prejudice to her right to raise it in a subsequent motion for appropriate relief.

Appeal by defendants from judgments entered 30 January 2012 by Judge Gary M. Gavenus in Buncombe County Superior Court. Heard in the Court of Appeals 30 January 2013.

STATE v. HERNANDEZ

[227 N.C. App. 601 (2013)]

*Attorney General Roy Cooper, by Special Deputy Attorney General Richard E. Slipsky, for the State in response to Defendant Rene Reyes Hernandez.*

*Attorney General Roy Cooper, by Assistant Attorney General Martin T. McCracken, for the State in response to Defendant Dawn Michelle Davis.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender S. Hannah Demeritt, for Defendant-Appellant Hernandez.*

*Bushnaq Law Office, PLLC, by Faith S. Bushnaq, for Defendant-Appellant Davis.*

ERVIN, Judge.

Defendants Rene Reyes Hernandez and Dawn Michelle Davis[1] appeal from judgments sentencing them to 25 to 30 months imprisonment based upon pleas of guilty to various drug-related offenses. On appeal, Defendants argue that the trial court erred by denying their motions to suppress evidence seized from a motor vehicle owned by Defendant Davis and operated by Defendant Hernandez and from a residence occupied by Defendant Davis. After careful consideration of Defendants' challenges to the trial court's order in light of the record and the applicable law, we conclude that Defendants have failed to properly preserve their principal challenge to the trial court's order for appellate review, that Defendant Davis' ineffective assistance of counsel claim is not ripe for determination at this time, and that, for these reasons, the trial court's judgments should remain undisturbed.

## I. Factual Background

### A. Substantive Facts

At 7:04 p.m. on 19 March 2011, the Buncombe County Sheriff's Department received an anonymous phone call asserting that a drug transaction would occur later that evening at a specific mobile home located in Woodfin. According to the caller, 50 pounds of marijuana would be delivered by an Hispanic male to a tan and off-white mobile home which

---

1. As a result of the fact that these two cases "involve common issues of law" and arise out of the same incident, the Court has consolidated them for decision on its own initiative pursuant to N.C.R. App. P. 40.

had a large front porch on which a number of children's bicycles would be situated. The individual making the delivery would be coming from Hendersonville and would be driving a black Chevy Tahoe with tinted windows. According to the caller, an Hispanic male named "Renea" Hernandez and a white female named Dawn Davis would leave the mobile home around 4:00 a.m. in a maroon Honda for the purpose of taking the marijuana into Tennessee via I-26. The caller also indicated that the maroon Honda was registered to and would be driven by Defendant Davis.

Shortly thereafter, Officer Corey Smith of the Woodfin Police Department traveled to the address provided by the anonymous caller in an attempt to verify the accuracy of the information that had been provided by that individual. Upon arriving at the residence, Officer Smith observed a maroon vehicle sitting outside of the mobile home. In addition, Officer Smith observed an Hispanic male sitting on the couch inside the mobile home. Finally, Officer Smith noticed that the mobile home had a large front porch on which a number of bicycles were situated.

Although certain portions of the information provided by the caller were correct, other portions turned out to be inaccurate. For example, no black Tahoe was parked at the residence. In addition, the maroon vehicle which the officers observed was a 1995 Nissan Maxima rather than a Honda. Finally, the mobile home which Officers Lawrence and Smith observed was blue and white rather than tan and off-white.

After this initial examination of the mobile home and its surroundings, Officer Smith left the area and met up with Officer Lawrence Thomas, also of the Woodfin Police Department, to decide how to proceed. The officers returned to the vicinity of the mobile home at approximately 11:00 p.m. for the purpose of conducting surveillance from a nearby church parking lot. At 3:56 a.m., Officer Smith observed a dark-colored vehicle, which he believed to be the same vehicle that he had observed at the time of his earlier visit, leave the area. At that point, Officer Smith began to follow the vehicle, which began heading west on I-26.

After confirming that the vehicle in question was a maroon Nissan Maxima registered to Defendant Davis and that it bore the same registration place that had been affixed to the vehicle that he had observed at the mobile home earlier that evening, Officer Smith received information to the effect that Defendant Davis' operator's license had been suspended. Although there were two individuals in the maroon Nissan, Officer Smith could not confirm the race, gender, or any other identifying characteristics of the vehicle's driver due to the distance at which he was following it and the limited light that was available at that time of

morning. In spite of the fact that the driver had not committed any traffic violation in his presence, Officer Smith, eventually joined by Officer Lawrence, stopped the vehicle after following it for approximately two and a half miles based upon the fact that Defendant Davis' operator's license had expired.

After Officer Smith initiated the stop, he activated his spotlight for the purpose of illuminating the interior of the vehicle. Upon doing that, Officer Smith was able to determine that the vehicle was occupied by both a male and a female person and that the male occupant was driving. As a result, Officer Smith knew at this point "that the registered owner was not driving."

Officer Smith then approached the passenger side of the vehicle for the purpose of speaking with Defendant Davis. Upon reaching the vehicle, Officer Smith informed Defendant Davis that he had stopped the car because "the registered owner's driver's license was suspended." Defendant Davis responded that she was the registered owner of the vehicle and that her male friend was driving the car because her license had been suspended. Next, Officer Smith asked Defendant Davis for the vehicle's registration card and asked Defendant Hernandez, who had been driving, for his license. After Defendant Hernandez stated that he did not have a driver's license, Officer Smith told him to turn off the car, hand over the keys, step out of the car, and go to the rear of the vehicle for the purpose of speaking with Officer Lawrence, who had also arrived on the scene.

As soon as Defendant Hernandez had complied with this instruction, Officer Smith asked Defendant Davis whether the vehicle contained anything that he needed to know about, including "drugs, guns, illegal knives, or anything." In response, Defendant Davis told Officer Smith that there were twenty pounds of marijuana in the car and pointed to the location at which the marijuana was situated. Upon receiving that information, investigating officers searched the vehicle and found some powder cocaine and approximately twenty pounds of marijuana in a garbage bag. After Defendant Davis consented to a search of her residence, investigating officers found a small quantity of marijuana, a pipe, and some rolling papers at that location.

### B. Procedural History

On 20 March 2011, magistrate's orders were issued charging Defendants with trafficking in marijuana by possession, maintaining a vehicle resorted to by persons using controlled substances, and conspiring with each other to traffic in marijuana. On the same date, a magistrate's order charging Defendant Davis with possession of cocaine and

a citation charging Defendant Davis with possession of drug paraphernalia were issued. On 11 July 2011, the Buncombe County grand jury returned bills of indictment charging Defendants with trafficking in marijuana by transportation, trafficking in marijuana by possession, maintaining a vehicle used for keeping and selling controlled substances, and conspiring with each other to traffic in marijuana by possession and transportation. In addition, the Buncombe County grand jury returned bills of indictment charging Defendant Davis with possession of cocaine and possession of drug paraphernalia.[2]

On 10 October 2011, Defendant Hernandez filed a motion seeking to have all of the evidence seized as a result of the search of Defendant Davis' vehicle and residence suppressed on the grounds that the information provided to investigating officers by the anonymous caller was insufficient to create a reasonable articulable suspicion that criminal activity was afoot. On 8 December 2011, Defendant Davis filed a substantively identical suppression motion. Defendants' suppression motions came on for a joint hearing before Judge James U. Downs at the 5 December 2011 criminal session of the Buncombe County Superior Court. During the hearing, the State presented the testimony of Officers Lawrence and Smith, who were cross-examined by counsel for Defendant Hernandez. Neither defendant presented any evidence at the suppression hearing.

After all the evidence had been received at the suppression hearing, Judge Downs heard arguments from counsel for the State and Defendants. In the course of seeking to persuade Judge Downs to deny Defendants' suppression motions, the State argued that the issue raised by Defendants' suppression motions was controlled by the decision of this Court in *State v. Hess*, 185 N.C. App. 530, 648 S.E.2d 913 (2007), *disc. review improvidently granted*, 362 N.C. 283, 658 S.E.2d 657 (2008), given that investigating officers had a reasonable articulable suspicion that Defendant Davis was operating a motor vehicle without a license at the time that they stopped her vehicle. In response, Defendant Hernandez's trial counsel argued that the justification for the stop advanced by the investigating officers was "nothing more than a pretext;" that the "only reason that [officers] were there that night [was] because of the anonymous tip;" and that the information provided by the anonymous caller did not suffice to establish the reasonable articulable suspicion needed to support a valid traffic stop. Defendant Davis' trial counsel did not present

2. At some point, Defendant Hernandez was also charged with driving without being properly licensed to do so. However, no criminal pleading charging Defendant Hernandez with that offense appears in the record.

an argument in support of her suppression motion before Judge Downs. At the conclusion of the suppression hearing, Judge Downs concluded that the investigating officers had a valid basis for stopping Defendants based upon the fact that Defendant Davis did not have a valid operator's license and that, given "the totality of the circumstances," "the stop was proper, not in violation of the Fourth Amendment."

After reserving her right to seek appellate review of the denial of her suppression motion, Defendant Davis entered a plea of guilty as charged on 30 January 2012. Based on Defendant Davis' guilty pleas, the trial court entered a judgment consolidating Defendant Davis' trafficking in marijuana by possession and trafficking in marijuana by transportation convictions for judgment and sentencing her to a term of 25 to 30 months imprisonment and a separate judgment consolidating her convictions for conspiracy to traffic in marijuana by possession and transportation, maintaining a vehicle for keeping and selling marijuana, possession of cocaine, and possession of drug paraphernalia for judgment and sentencing her to a concurrent term of 25 to 30 months imprisonment. On the same date, after also reserving his right to seek appellate review of the denial of his suppression motion, Defendant Hernandez entered a plea of guilty as charged. Based on Defendant Hernandez's guilty pleas, the trial court entered a judgment consolidating Defendant Hernandez's conspiracy to traffic in marijuana by possession and transportation, maintaining a vehicle for the purpose of keeping or selling controlled substances, and driving without being properly licensed to do so for judgment and sentencing Defendant Hernandez to a term of 25 to 30 months imprisonment and a separate judgment consolidating Defendant Hernandez's convictions for trafficking in marijuana by possession and trafficking in marijuana by transportation for judgment and sentencing Defendant Hernandez to a concurrent term of 25 to 30 months imprisonment. Defendants noted an appeal to this Court from the trial court's judgments.

## II. Legal Analysis

### A. Appealability

[1] As an initial matter, we note that Defendant Davis' appellate counsel has petitioned this Court for the issuance of a writ of *certiorari* authorizing review of her challenges to the trial court's judgments out of concern that the notice of appeal given by her trial counsel was inadequate. At the time that she noted Defendant Davis' appeal, Defendant Davis' trial counsel stated, "Miss Davis gives notice of appeal, also, and asks that the appellate defender be appointed to represent her to appeal the motion to suppress."

"An order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty." N.C. Gen. Stat. § 15A-979 (b). This Court has held on numerous occasions that a defendant seeking appellate review of an order denying a suppression motion following the entry of a guilty plea is required to note his or her appeal from the trial court's judgment rather than from the order denying the defendant's suppression motion. As we noted in one such decision:

> Defendant has failed to appeal from the judgment of conviction and our Court does not have jurisdiction to consider Defendant's appeal. In North Carolina, a defendant's right to pursue an appeal from a criminal conviction is a creation of state statute. Notice of *intent* to appeal prior to plea bargain finalization is a rule designed to promote a fair posture for appeal from a guilty plea. Notice of Appeal is a procedural appellate rule, required in order to give this Court jurisdiction to hear and decide a case. Although Defendant preserved his right to appeal by filing his written notice of intent to appeal from the denial of his motion to suppress, he failed to appeal from his final judgment, as required by N.C. [Gen. Stat.] § 15A-979(b).

*State v. Miller*, 205 N.C. App. 724, 725, 696 S.E.2d 542, 542-43 (2010) (citations and quotation marks omitted). As a result, this Court dismissed the defendant's appeal. *Id.* at 726, 696 S.E.2d at 543.

We need not, however, reach the issue of whether Defendant Davis' appeal is subject to dismissal as having been taken from the order denying her suppression motion instead of from the trial court's judgments given our decision, in the exercise of our discretion, to allow her alternative request for the issuance of a writ of *certiorari* pursuant to N.C.R. App. P. 21(a) (stating that "[t]he writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action"). Thus, we will now proceed to evaluate the merits of both Defendants' challenges to the denial of their suppression motions.

### B. Impermissible Extension of an Investigative Detention

[2] In challenging the denial of their suppression motions before this Court, Defendants argue that, even though the initial stop of Defendant Davis' vehicle did not offend applicable constitutional limits, the stop

was impermissibly extended given that investigating officers had no justification for continuing to detain Defendants or to question Defendant Davis after determining that Defendant Hernandez, rather than Defendant Davis, had been driving. There is no need for us to address the merits of this contention, however, given that it was never advanced at the suppression hearing held before Judge Downs.

According to well-established North Carolina law, "where a theory argued on a[n] appeal was not raised before the trial court[,] the argument is deemed waived on appeal." *State v. Davis*, 207 N.C. App. 359, 363, 700 S.E.2d 85, 88 (2010) (citing *State v. Augustine*, 359 N.C. 709, 721, 616 S.E.2d 515, 525 (2005), *cert denied*, 548 U.S. 925, 126 S. Ct. 2980, 165 L. Ed. 2d 988 (2006)); *see also* N.C.R. App. P. 10(a)(1) (providing that "a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling . . . [and] obtain a ruling"). As a result, in a situation in which a defendant argued on appeal that his confession should have been suppressed as the product of an unlawful arrest after asserting an entirely different basis for seeking the suppression of the confession in question before the trial court, the Supreme Court declined to address the defendant's argument on the merits in reliance upon the principle that a "[d]efendant may not swap horses after trial in order to obtain a thoroughbred upon appeal." *State v. Benson*, 323 N.C. 318, 321-22, 372 S.E.2d 517, 518-19 (1988) (citing *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)). Thus, a criminal defendant is not entitled to advance a particular theory in the course of challenging the denial of a suppression motion on appeal when the same theory was not advanced in the court below.

Although Defendants filed separate suppression motions in the trial court, the sections describing the reasons that the evidence in question should be suppressed were the same in both motions. For that reason, the only issue raised by Defendants' motions was the extent, if any, to which the information provided by the anonymous caller afforded the investigating officers the reasonable articulable suspicion needed to justify stopping Defendant Davis' vehicle. During the joint hearing held for the purpose of considering Defendants' suppression motions, Defendant Hernandez's trial counsel focused his attention on the sufficiency of the anonymous tip, concluding his argument by stating that "it's clear that the reason that [Defendants] were pulled on this evening was because of the tip, and we'd ask the court to suppress it." Defendant Davis' trial counsel made no separate argument, apparently opting to rely on the contentions advanced on behalf of Defendant Hernandez. At no point during the suppression hearing did either defendant make an

"impermissible extension" argument such as the one which they seek to assert on appeal. As a result, given that Defendants have advanced an argument before this Court to which they did not allude in the court below, we conclude that their challenge to the trial court's suppression order has not been properly preserved for appellate review and cannot provide a basis for an award of appellate relief.[3]

### C. Ineffective Assistance of Counsel

[3] In addition, Defendant Davis argues that, in the event that her challenge to the denial of her suppression motion as advanced before this Court was not properly preserved for appellate review, she received constitutionally deficient representation from her trial counsel. More specifically, Defendant Davis argues that "[t]here can be no reasonably strategic reason to fail to raise the argument that reasonable suspicion ceased to exist once the officer established that a man, not Ms. Davis, was driving the car" and that she was prejudiced by her trial counsel's failure to properly preserve the challenge to the seizure of evidence from her vehicle and residence for appellate review. After carefully reviewing the record, however, we conclude that this issue is not ripe for consideration on direct appeal and should be dismissed without prejudice to Defendant Davis' right to raise it in a subsequent motion for appropriate relief.

As a general proposition, "claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal." *State v. Stroud*, 147 N.C. App. 549, 553, 557 S.E.2d 544, 547 (2001), *disc. review denied*, 356 N.C. 623, 575 S.E.2d 758 (2002).

> It is well established that ineffective assistance of counsel claims "brought on direct review will be decided on the

---

3. Aside from the argument discussed in the text, Defendant Hernandez contends on appeal, as he did in the court below, that the information communicated to investigating officers during the anonymous call did not suffice to provide investigating officers with the reasonable articulable suspicion needed to support a valid traffic stop. We need not address this argument in any detail, however, given that the trial court's findings of fact establish that investigating officers stopped Defendant Davis' vehicle because it was registered in her name, her driver's license was suspended, and they were unable to determine the identity of the driver. As this Court has previously held, investigatory stops made on this basis are lawful. *See Hess*, 185 N.C. at 534, 648 S.E.2d at 917 (holding, consistently with the result reached in the majority of jurisdictions, that, "when a police officer becomes aware that a vehicle being operated is registered to an owner with a suspended or revoked driver's license, and there is no evidence appearing to the officer that the owner is not the individual driving the automobile, reasonable suspicion exists to warrant an investigatory stop"). Thus, Defendant Hernandez's alternative challenge to Judge Downs' order lacks merit.

> merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." Thus, when this Court reviews ineffective assistance of counsel claims on direct appeal and determines that they have been brought prematurely, we dismiss those claims without prejudice, allowing defendant[s] to bring them pursuant to a subsequent motion for appropriate relief in the trial court.

*State v. Thompson*, 359 N.C. 77, 122-23, 604 S.E.2d 850, 881 (2004) (citation omitted) (quoting *State v. Fair*, 354 N.C. 131, 166, 577 S.E.2d 500, 524 (2001), *cert. denied*, 535 U.S. 1114, 122 S. Ct. 2332, 153 L. Ed. 2d 162 (2002)), *cert. denied.*, 546 U.S. 830, 126 S. Ct. 48, 163 L. Ed. 2d 80 (2005). After carefully reviewing the record developed in this case, we believe that Defendant Davis has asserted this ineffective assistance of counsel claim prematurely.

> To make a successful ineffective assistance of counsel claim, a defendant must show that (1) defense counsel's "performance was deficient," and (2) "the deficient performance prejudiced the defense." Counsel's performance is deficient when it falls "below an objective standard of reasonableness." Deficient performance prejudices a defendant when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." "A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*State v. Waring*, 364 N.C. 443, 502, 701 S.E.2d 615, 652 (2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 2064-65, 2068, 80 L. Ed. 2d 674, 693-94, 698 (1984)) (other citation omitted), *cert. denied*, ___ U.S. ___, 132 S. Ct. 132, 181 L. Ed. 2d 53 (2011). In considering the merits of ineffective assistance of counsel claims, "[d]ecisions concerning which defenses to pursue are matters of trial strategy and are not generally second-guessed by this Court." *State v. Prevatte*, 356 N.C. 178, 236, 570 S.E.2d 440, 472 (2002), *cert. denied*, 538 U.S. 986, 123 S. Ct. 1800, 155 L. Ed. 2d 681 (2003).

Although Defendant Davis argues that there is no possible strategic or tactical justification for her trial counsel's failure to argue that the seizure of the items that she sought to have suppressed resulted from the impermissible extension of a lawful investigatory detention, we are

unable to make that determination based on our review of the record that is before us on direct appeal. Ordinarily, the extent to which a defendant's trial counsel made a particular strategic or tactical decision is a question of fact. *E.g. United States v. Cockrell,* 720 F.2d 1423, 1426 (5th Cir. 1983) (stating that "the district court's determinations of whether counsel's actions were strategic and reasonable are questions of fact that should govern unless they are clearly erroneous"), *reh'g denied,* 724 F.2d 926 (5th Cir.), *cert. denied,* 467 U.S. 1251, 104 S. Ct. 3534, 82 L. Ed. 2d 839 (1984); *Edwards v. Lamarque,* 475 F.3d 1121, 1126 (9th Cir.) (stating that, "[a]lthough the reasonableness of counsel's decision is best described as a question of law, whether [counsel's] actions were indeed 'tactical' is a question of fact"), *cert. denied,* 552 U.S. 1009, 128 S. Ct. 532, 169 L. Ed. 2d 371 (2007); *Provenzano v. Singletary,* 148 F.3d 1327, 1330 (11th Cir.) (stating that "[t]he question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct"), *reh'g en banc denied,* 162 F.3d 100 (11th Cir. 1998). However, the present record sheds little or no light on the reason that Defendant Davis' trial counsel failed to raise the "impermissible extension" issue at the suppression hearing held before Judge Downs. On the one hand, the "impermissible extension" issue may simply have not occurred to her. On the other hand, she might have researched the issue in question and determined that such an argument would not have been successful or that the argument actually advanced at the suppression hearing was more likely to succeed than the one upon which Defendant Davis now seeks to rely. In the absence of additional information concerning the nature and extent of Defendant Davis' trial counsel's preparation and the defense strategy that she elected to adopt, we cannot determine whether the failure of Defendant Davis' trial counsel to raise the "impermissible extension" issue resulted from oversight or from a legitimate strategic or tactical decision without speculating about the answer to questions about which we lack sufficient information. For obvious reasons, this Court should refrain from making such speculative determinations. *State v. Gillis,* 158 N.C. App. 48, 55, 580 S.E.2d 32, 37-38 (stating that this "Court is bound on appeal by the record on appeal as certified and can judicially know only what appears in it"), *disc. review denied,* 357 N.C. 508, 587 S.E.2d 887 (2003); *see also, e.g., State v. Al-Bayyinah,* 359 N.C. 741, 752-53, 616 S.E.2d 500, 509-10 (2005) (dismissing an ineffective assistance of counsel claim asserted on direct appeal without prejudice because "[t]rial counsel's strategy and the reasons therefor [were] not readily apparent from the record," necessitating the development of "more information . . . [in order] to [permit a] determin[ation

as to whether] defendant's claim satisfies the *Strickland* test"), *cert. denied*, 547 U.S. 1076, 126 S. Ct. 1784, 164 L. Ed. 2d 528 (2006); *State v. Campbell*, 359 N.C. 644, 693, 617 S.E.2d 1, 31 (2005) (dismissing an ineffective assistance of counsel claim asserted on direct appeal without prejudice because, "from the record before the Court, it could only speculate as to why defense counsel chose to argue self-defense"), *cert. denied*, 547 U.S. 1073, 126 S. Ct. 1773, 164 L. Ed. 2d 523 (2006); *State v. Patel*, __ N.C. App. __, __, 719 S.E.2d 101, 110 (2011) (dismissing an ineffective assistance of counsel claim asserted on direct appeal without prejudice on the grounds that this Court was unable to "determine from the cold record whether defense counsel in this case had a strategic reason for stipulating that North Carolina has jurisdiction"), *disc. review denied*, __ N.C. __, 720 S.E.2d 395 (2012); *State v. Loftis*, 185 N.C. App. 190, 203, 649 S.E.2d 1, 10 (2007) (dismissing an ineffective assistance of counsel claim asserted on direct appeal without prejudice on the grounds that the Court lacked "sufficient information regarding trial counsel's strategy"), *disc. review denied*, 362 N.C. 241, 660 S.E.2d 494 (2008). The inappropriateness of engaging in such speculation clearly underlies our Supreme Court's recognition that, in many cases, " 'defendants likely will not be in a position to adequately develop many [ineffective assistance of counsel] claims on direct appeal.' " *State v. Long*, 354 N.C. 534, 540, 557 S.E.2d 89, 93 (2001) (quoting *Fair*, 354 N.C. at 167, 557 S.E.2d at 525). As a result, given our determination that additional factual development is needed in order to properly resolve Defendant Davis' ineffective assistance of counsel claim, we conclude that this claim should be dismissed without prejudice to Ms. Davis' right to assert it in a subsequent motion for appropriate relief.[4]

### III. Conclusion

Thus, for the reasons set forth above, we conclude that none of Defendants' challenges to the trial court's judgments justify an award of appellate relief. As a result, the trial court's judgments as to Defendant Hernandez (COA12-924) should, and hereby do, remain undisturbed and

---

4. Defendant Davis has requested that we excuse her failure to challenge the denial of her suppression motion before the trial court on "impermissible extension" grounds and to decide that issue on the merits pursuant to our authority under N.C.R. App. P. 2 (authorizing an appellate court, in order "[t]o prevent manifest injustice" or "to expedite decision in the public interest," to "suspend or vary the requirements or provisions of any of these rules"). However, given that this issue was not litigated before the trial court, there is a substantial possibility that the record concerning this issue was not fully developed and certain important factual issues not resolved. As a result, we decline Defendant Davis' invitation to utilize our authority under N.C.R. App. P. 2 in order to reach the merits of this "impermissible extension" issue.

the trial court's judgments as to Defendant Davis (COA12-1131) should, and hereby do, remain undisturbed without prejudice to her right to file and litigate a subsequent motion for appropriate relief raising the ineffective assistance of counsel claim discussed above.

AFFIRM as to No. COA12-924; AFFIRM IN PART, DISMISSED IN PART as to No. COA12-1131.

Judges Bryant and Elmore concur.